CASE 66—PETITION EQUITY—SEPTEMBER 30.

## Smith vs. Smith, &c.

APPEAL FROM BOURBON CIRCUIT COURT.

A written contract between Peter Smith and Nancy Smith, the widow and administratrix of his deceased son, Noah Smith, contained the following words: "It being the express agreement and understanding between the parties hereto, that on a final distribution of his estate, the said Peter Smith *intends* to make the aforesaid children, who represent their father, the said Noah Smith, equal in all things with his son, Lee C. Smith." *Held*—

*First.* That the words above stated constitute an *obligation* on the part of Peter Smith to make Noah Smith's children equal with Lee C. Smith in the distribution of Peter Smith's estate.

*Second.* That the release of an asserted claim by the administratrix was a sufficient consideration to uphold said obligation.

*Third.* Although the agreement was with Nancy Smith, yet as it was made for the benefit of her children, they had a right to sue in equity for its enforcement. (*Civil Code, secs.* 30, 33.)

*Fourth.* The recognition by Peter Smith, in his will, of a debt to Lee C. Smith, which, in point of fact, he did not owe, is held invalid and ineffectual, it being shown to have been made for the purpose of defeating the above obligation to Nancy Smith for the benefit of her children.

5bu 625
112 723
5bu 625
128 301

Smith vs. Smith, &c.

W. W. Trimble,
R. T. Davis, and
John A. Prall,                                    For Appellant,

CITED—

1 *Strange*, 592 ; *Crow vs. Rogers.*

1 *Best & Smith*, 569 ; 13 *Illinois*, 140.

4 *Scott N. R.*, 621 ; *Bell vs. Gardner.*

4 *Man. & Grang.*, 11.

3 *White & Tudor's Leading Cases*, 3 *Amer. ed.*, 406.

*Metcalfe on Contracts*, 177, 206–10.

1 *Best & Smith*, 393 ; *Twiddle vs. Atkinson.*

4 *B. & Ad.*, 433 ; *Price vs. Easten.*

6 *Watts*, 182 ; *Blymire vs. Boistle.*

6 *Watts*, 349 ; *Morrison vs. Beckey.*

1 *Herr & Gill*, 383 ; *Owings' ex'r vs. Owings.*

12 *Leigh*, 204 ; *Ross vs. Milne.*

7 *N. H.*, 345 ; *Batterfield vs. Hartshorn.*

3 *Pick.*, 83 ; *Cabot vs. Hoskins.*

7 *Mass.*, 449 ; *Warden vs. Tucker.*

7 *Mass.*, 483 ; *Freeman vs. Boynton.*

4 *Mass.*, 347 ; *May vs. Coffin.*

17 *B. Mon.*, 708 ; *Clarke vs. Clarke.*

13 *B. Mon.*, 528 ; *Hook vs. Hook.*

1 *Met.*, 582 ; *Ford vs. Thompson.*

3 *Met.*, 272 ; *Cleaver and wife vs. Kirk's heirs.*

1 *Bibb*, 240 ; 8 *B. Mon.*, 167.


Jas. F. Robinson,
Hunt & Beck,
R. H. Hanson,
Alexander & Turney,                              For Appellees,

CITED.

1 *Met.*, 582 ; *Ford vs. Branham.*

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

Involved in debt in an amount greater than the value of all his property and means of payment, Noah Smith, late of Bourbon county, on the 8th of September, 1851, conveyed his estate, real and personal, to Peter Smith, his father, and Robert Pollock, in trust for the payment of certain debts therein enumerated, one of which was to his father of about five thousand dollars, and some others, upon which his father was bound as his surety.

In January, 1852, Thos. L. Way and William Campbell, creditors of Noah Smith, filed their petition in the Bourbon circuit court against him, his trustees, and the other creditors provided for, praying for a foreclosure of the deed and a sale of the trust property for the payment of the debts secured thereby.

In July, 1852, pending that suit, Noah Smith died intestate, and administration was granted to his widow, Mrs. Nancy Smith, on his estate; and, as the personal representative of her deceased husband, she was made a defendant to the suit of *Way et al. vs. Smith, &c.*

On the 6th of September, 1852, a written agreement was entered into between Peter Smith and Nancy Smith, as widow and also as administratrix of Noah Smith, deceased, which was also signed by John H. Smith, a son and heir of Noah Smith, deceased, and by George W. Edwards, who had married a daughter of said decedent, to the following effect.

After referring to the deed of trust aforesaid, and the suit of *Way, &c., vs. The Trustees, &c.,* and the objects and purposes of each, it recites, in substance, that Nancy Smith, as administratrix of Noah Smith, deceased, has, as she believes, certain claims and demands against said Peter Smith, on account of a certain partnership in the mercantile business, existing between said Peter and

Noah Smith, and also as widow of said decedent. She agrees on her part to a full and complete sale of all the property conveyed in said deed of trust, including the then growing crop on the land, and will not, in any way whatever, either as administratrix or otherwise, oppose or obstruct the rendering a decree by the Bourbon circuit court at its next term, or any other time or term, for sale of the trust property, and an application of the proceeds to the purposes of the trust; and said Peter Smith, on his part, agrees that he will protect said two hundred and twelve acres of land (which passed by the deed aforesaid to the trustees), subject at all times to the dower interest of the said Nancy Smith therein, so as that the same shall be secured in fee simple to John Henry, Newton J., Thomas B., Noah D., Mary A. S. Edwards, late Smith, and Louisa J. Smith, children of said Noah Smith, deceased, and their heirs and assigns forever; but, in protecting said land to said children, subject to the dower right of their mother, whatever the same shall cost the said Peter Smith, shall be charged to them, the said children, as so much in the way of advancement to them as the children of Noah Smith, deceased, son of said Peter; and in charging the same to them as an advancement—

"It is further understood, that said Peter Smith shall not charge, in the form of advancement or otherwise, said tract of two hundred and twelve acres of land, as having been heretofore made to said Noah Smith in his lifetime, it being the express agreement and understanding between the parties hereto, that, on a final distribution of his estate, the said Peter Smith *intends* to make the aforesaid children, who represent their father, the said Noah Smith, equal in all things with his son, Lee C. Smith.

" Provision is also to be made, out of the growing crop and stock on hand, for the support and maintenance of said Nancy, as widow of said Noah Smith, for one year, according to law.

" The said John Henry Smith, son of said Noah, and George W. Edwards, who married his daughter Mary A. S., agree to, and do hereby, surrender to said trustees all claim they may have to any property in their possession which may be named and described in said deed of trust. And said Nancy Smith, as administratrix of said Noah Smith, agrees that she will exhibit her answer to the petition of said Way and others, and pray the court for a decree at the next term of the Bourbon circuit court, and that she will, and does hereby, as administratrix aforesaid, release said Peter Smith from all claims and demands which there may be against said Peter Smith on account of the partnership existing heretofore between said Noah and himself."

Peter Smith made and published his will on the 29th of May, 1856, lived till the early part of the year 1864, and on the 30th of March of the last named year his will was probated. In June, 1865, this suit in equity was brought by the children of Noah Smith, deceased, against Lee C. Smith, the only surviving child of said testator, and William A. Foreman, administrator with the will annexed, charging a combination between said Peter Smith, in his lifetime, with his son, the said L. C. Smith, to make such disposition of the large estate of the former as would deprive the plaintiffs in the action of the benefit of the contract made by their mother with their grandfather; that the administrator had not accounted for all the assets of his testator that had come to his hand, or

should have been received by him; that Lee C. Smith had large amounts of property in possession which belonged to his father; that he had been advanced, and then claimed property owned by his father at his death, greatly more in value than they had received from him; and they conclude with a prayer for an enforcement of the contract made by their mother with their grandfather, and for a settlement of the accounts of the administrator.

The defendants answered jointly, but traversed respectively the allegations made against each of them, and resisted the relief sought.

On final hearing, the court below rendered judgment against Lee C. Smith for five thousand three hundred and thirty-six dollars and twenty-six cents, with legal interest from the 1st of January, 1866, till paid, and costs, from which he has appealed.

Of the various and multiplied objections taken to the judgment by the learned counsel of appellant, those will be specially noticed which seem to be most formidable.

*First.* It is contended that Peter Smith, by the writing relied on by appellees as the foundation of their action, was only bound to protect the two hundred and twelve acres of land to appellees, and secure the same in fee simple for their benefit; and having done that, said writing imposed no other obligation on him; and the addition of the words, " the said Peter Smith *intends* to make the aforesaid children, who represent their father, Noah Smith, equal in all things to his son Lee," was the mere expression of his feelings and purposes at that time, and explanatory of the motives which induced him to enter into the agreement with Nancy Smith.

This argument might be conclusive if the words quoted had stood isolated, or not immediately preceded by, and

connected with, words which import a binding contract —such as, that "*it is the express agreement* and understanding between the parties thereto, that on a final distribution of his estate, the said Peter Smith *intends*," &c., and followed by the statement of a sufficient consideration to uphold the undertaking on the part of Peter Smith. The connection in which the word criticised is found with the whole context, shows that it was used by the parties to bind Peter Smith to make provision for the children of his son Noah equal to any he should make for his son Lee; that it was obligatory on him; and the expressions in his will in relation to that subject, and other facts which may be hereafter named, show that Peter Smith himself so understood it.

*Second.* It is insisted that the agreement is without any valid or legal consideration to uphold it. That question we now proceed to examine.

Nancy Smith, as administratrix of Noah Smith, deceased, in consideration of said agreement of Peter Smith for the benefit of her children, released him from all claims she held against him as a partner of her husband in a mercantile establishment. The record discloses the fact that debts had been contracted by her intestate to replenish goods for that concern. A large amount of said debts were unpaid; a portion of them were secured by the conveyance of Noah Smith to his father and Pollock, for which, as partner, Peter Smith was bound to the holders, and as between himself and the personal representative of his deceased partner, he was liable for his proportionate part; and he was accountable for his part of the losses sustained by the firm; and it is shown there were losses. But the partnership is denied; and it is contended that the claim set up by Mrs. Smith on that account had no

foundation.    And  assuming  that  to  be  so,  numerous
authorities  are  cited  to  show  that  a  compromise  of  an
imaginary  claim,  and  an  undertaking  to  pay  for  the
compromise  of  such  a  claim,  imposes  no  obligation.
The  legal  proposition  will  not  be  controverted.

But  is  such  a  case  presented  by  this  record?  Or  is
the  appellant  sustained  by  the  facts  that  there  was  no
partnership  between  these  parties?    If  it  be  admitted
that  the  portion  of  the  recitals  in  the  introductory  part
of  the  instrument,  as  reasons  for  its  execution,  where
it  is  stated  "that  Nancy  Smith  believes  that,  as  admin-
istratrix  of  Noah  Smith,  she  has  claims  against  Peter
Smith  on  account  of  a  certain  partnership  in  the  mer-
cantile  business  existing  between  him  and  said  dece-
dent,"  amounted  to  the  expression  of  a  belief  on  her
part  that  such  a  partnership  existed,  still  the  last  para-
graph  of  the  instrument  must  be  regarded  as  an  ex-
press  admission  of  a  partnership  having  existed  between
them.

And  there  is  other  evidence  besides  the  statements
and  admissions  in  the  instrument  aforesaid.    Coppage
proves  that  Peter  Smith  was  a  partner  in  the  mercan-
tile  house ;  that  he  had  seen  the  articles  of  partnership,
and  had  them  in  his  possession.    Besides,  in  a  contro-
versy  with  Nancy  Smith,  Peter  Smith  set  up  and  relied
on  the  covenants  and  undertakings  by  him  in  this  very
instrument  as  a  defense  to  the  action,  there  alleging  it
is  legally  binding  on  the  parties  thereto.    For  these
and  other  reasons  we  cannot  hesitate  to  conclude  that
the  consideration  was  valid.

*Third*.  It  is  contended  that  the  contract  having  been
made  by  Nancy  Smith  with  the  testator,  Peter  Smith,
that  appellees  cannot  maintain  the  action  in  their  names.

Before  the  adoption  of  the  *Civil  Code*,  the  party  for
whose  benefit  a  contract  was  made  could  maintain  an

action in equity on it; and *section* 30, *Civil Code*, expressly provides: "Every action must be prosecuted in the name of the real party in interest." The 33*d section* permits the person, with whom or in whose name a contract is made for the benefit of another, to bring an action on the contract without joining the beneficiary; but that does not take the right from the real party in interest to bring the suit in his own name. There can be nothing in that objection, therefore.

*Finally.* The last objection to be noticed is, that no breach of the alleged promise and agreement has been shown, and, consequently, no judgment should have been rendered in favor of appellees.

The circuit judge charged to Lee C. Smith, as an advancement by his father, two hundred acres of land, at the price of eleven thousand three hundred and sixty dollars and forty cents. That land was put down, at that price, because the two hundred and twelve acres which were secured to appellees under the contract, cost that sum, when it was purchased first from McDaniel, and the two tracts were estimated of equal value; and he charges Lee C. Smith for the advancement of eighty-one acres and twenty-six acres three thousand seven hundred and thirty-two dollars and ten cents, being the cost of the land less the amount paid on it by appellant—

Making the total,  - - - - -  $15,092 50

And appellees the cost of the 212 acres, at -    9,756 24

$5,336 26

Making the amount received by appellant greater than the amount received by appellees. To that mode of settlement no objection is perceived. But the question arises, was appellant properly charged with that sum?

If the testator left estate sufficient to pay that sum to appellees, and the same was in appellant's hands, it was right. If not, and any portion of the excess was advanced after the date of the contract sued on, he should be responsible for the one half of that excess. Appellant claimed that his father owed him eight thousand dollars, which he, in his will, acknowledged to be due, and directed to be paid before any distribution should be made of his estate; and on account of that alleged indebtedness, he received from the administrator, on the 14th of November, 1864, in debts on himself and others, nine thousand six hundred and six dollars and eighty-one cents; and if that debt was, in fact, not due to him, there is a sufficiency to equalize appellees' with him. Peter Smith, in his will, states that he owed the debt to his son as his partner in business; that a large proportion of his means, and those of his son, the appellant, had been absorbed in the payment of debts contracted by his son Noah, principally through his agency.

It appears in the record that all the debts for which testator was bound, as the surety of Noah, were secured by the deed of trust. At its date he only claimed that Noah owed him five thousand dollars, all of which was secured by said deed; and also, he was wholly unable to show, by vouchers or proof, that Noah owed him said amount. He recovered it because it was asserted in said deed that his claims amounted to that sum. A significant fact cannot be omitted, that on the 4th of July, 1853, testator and appellant signed an agreement, in which they stipulate and agree that the partnership then existing between them entitles each to one half of all the personal property on hand at that time, consisting of stock, "*money, cash,*" cash notes and accounts, not including negroes, and the partnership to continue.

This was nearly two years after the date of the deed of trust, and a year after Noah Smith's death. If the father had then been in debt to the son, it is strange he did not pay, at least as far as his part of the "*money and cash*" would go.

On the 29th of May, 1856, the date of Peter Smith's will, the partnership between himself and appellant had not been dissolved, and no final or full settlement had then been made; and it must be presumed none at all had been made, as the language of the will indicates. What had become of the cash, cash notes, accounts, and stock on hand on the 4th of July, 1853, when they agreed to continue the partnership, does not appear, nor is their amount or value shown. It does, however, appear that appellant had been making money and accumulating property rapidly; and it is not shown how it was that his partner lost money. There is no evidence or intimation that he had engaged in any speculation which proved disastrous; indeed, it does not appear that he had any business different from his son's. They were engaged in farming, rearing stock, and manufacturing whisky, and how it was that the one should make money and the other lose it, is not explained.

On the 12th of November, 1857, Peter Smith conveyed a tract of about two hundred and forty acres of land to appellant for the recited consideration of sixteen thousand eight hundred dollars, for which a note was executed, due and payable one day after date; and although the will acknowledges an indebtedness by Peter to appellant of eight thousand dollars in the sale of the land, there is no stipulation that that debt is to be taken from the price; but appellant undertakes to pay the whole price, wait for his eight thousand dollars till the death of his father, and risk his solvency, although, according

to the arguments, he had been losing money, and diminishing his estate from 1851 or 1852 regularly, and was then compelled to sell his old home, and the last acre of land he owned, to pay his debts; and on the note executed for the price of the land on the same day it was executed, appellant paid in two payments seven thousand eight hundred and ninety dollars, which are credited on the note; and although the sale of the land would terminate the partnership, there was no settlement of their partnership, no invoice taken, nor estimate made of the stock on hand, the money, notes, and accounts; nor does it appear what became of Peter Smith's portion thereof. Appellant does not allege, in any of his pleadings, that he purchased his partner's half. One witness, however, proves that he paid Peter Smith for his half of the partnership effects. These, and other facts, forbid the conclusion that Peter Smith owed appellant more than one thousand nine hundred and seventy-eight dollars and forty cents, the sum allowed by the circuit judge.

As to the whisky on hand, the evidence is so contratradictory and unsatisfactory that it is too unsafe and uncertain to base a judgment upon. After crediting appellant by the one thousand nine hundred and seventy-eight dollars and forty cents, as directed by the circuit judge, there will remain a sufficiency in his hands to pay appellees the amount of five thousand three hundred and thirty-six dollars and twenty-six cents, adjudged to them, which is approved; and the circuit court properly referred the cause to the master to restate the accounts, for the purpose of ascertaining whether there will be any balance after payment of debts of testator, and to divide it if there should be any.

The judgment is therefore *affirmed*.