## B. T. HINTON *v.* WM. GANO'S HEIRS, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—526.]

**Burden to Establish a Contract.**

    The burden is on a plaintiff, alleging that decedent with whom he lived had for a consideration agreed to convey by will to such plaintiff his estate, to establish such a contract.

**Evidence of Oral Contract.**

    Where a plaintiff seeks to take the whole of an estate and deprive the natural heirs therefrom, on an agreement made with the owner thereof whereby the owner agreed to give him such estate in consideration that he would live with him and manage his estate, to recover such a plaintiff must clearly establish such a contract.

APPEAL FROM SCOTT COURT OF COMMON PLEAS.

January 8, 1885.

OPINION BY JUDGE PRYOR:

While a circumstantial testimony or inferences from circumstances attending a transaction may be sufficient to rebut or establish the existence of a disputed fact we are compelled to conclude from the testimony in this case that no agreement was made by Gano with the father of the appellant or with the appellant himself that in consideration of the latter's living with Gano and becoming his adopted child or in consideration of services to be performed by the appellee for Gano that the latter at his death or the death of his wife would devise him his entire estate, but on the contrary the circumstances surrounding these parties and connected with the claim of the appellant lead to a different conclusion.

It is evident from the facts of the record that Gano and his wife intended at one time that the appellant should become the beneficiary of his estate and that the appellant expected that a will would be made excluding the heirs and next of kin of Gano and giving

the entire estate to him. We think it is equally manifest that no agreement was made to that effect and that none has been established from which the chancellor could render a judgment excluding the next of kin and vesting in appellant the absolute title or depriving the lawful heirs of any interest in the estate, by allowing such a claim for services as would consume the entire estate in its payment. If the agreement was clearly shown there can be no doubt but that a Court of Equity, Gano having failed to comply with its terms, would allow a fair compensation for the services rendered.

In all the cases involving a similar question decided by this court, the contract or agreement has been clearly established. In *Smith v. Smith,* 5 Bush (Ky.). 625, the contract was in writing and the consideration for its execution established. In the case of *Myles' Executors, et al. v. Myles' Heirs,* 6 Bush (Ky.) 237, it was shown by the evidence that George Myles expressly promised to devise his farm to the appellee in consideration of his services. It is said that an absolute obligation was alleged and proved. In the case of *McGuire v. McGuire,* 11 Bush (Ky.) 142, the agreement was plainly proven, and in all the cases it will be found that it requires more than a mere declaration by the devisor that he intends to dispose of his estate by devise to a particular person by reason of a consideration received, in order to create an equity that will be equivalent to the value of the property left by the devisor, or to create that sort of contract which would authorize the chancellor to compel compensation by reason of the failure of the devisor to comply with his promise.

The entire facts of this case show so far as the appellant is concerned that he performed services for Gano under the belief that he would be the owner by devise of his entire estate at his death but there never was any absolute obligation on Gano to make such a devise by reason of an express agreement to that effect, nor do the circumstances proven in this case, bearing upon the question raised, authorize the inference that such an agreement was made. The decedent may have and doubtless did declare to some of his neighbors that his purpose was to give to the appellant or devise to him all his estate, but such declarations are not sufficient to infer an agreement, when inconsistent with the conduct and action of the decedent and in conflict with the testimony introduced by the appellant for the purpose of establishing his claim.

The deposition of Vance, the first witness examined by the appellant, states that the decedent said when he took Tom it was the agreement with Uncle Billy (Tom's father) that he was to leave it all to him. The father's deposition is taken by the appellant also, and he says that no agreement was made. The deposition of the mother was taken at the same time and she knew nothing of the agreement. They were then about to surrender to Gano and wife the custody of their child and place him under their control, and if any contract was ever made then was the time that we might expect the parties would fix upon its terms, but the father and mother both contradict the truth of the statement said by the witness Vance to have been made him by Gano, and it is evident that no contract was ever made with the appellant. He was only two years of age when the decedent or his wife concluded to take him under their control. When seven or eight years of age the appellant made Gano's his permanent home and was even then for a short time schooled and clothed by his father. The father of the appellant had a large family of children, some fifteen in number, and Gano and wife were childless. They lived on adjacent farms and all parties were in moderate circumstances, and it was not unnatural or unreasonable that the wife of Gano, who was related to Hinton should desire to have one of the children reside with them, but it is unreasonable to infer the existence of an agreement to give to this appellant then only two years of age all of Gano's estate, when both his father and mother say that no such arrangement was made. From this gratuitous undertaking of Gano and wife to take the child and adopt it, originated that sort of affection for the child, on the part of both, as may have induced them to declare their purpose to make him the sole devisee of the estate, but the suggestions were merely voluntary and without any other consideration than their love and affection for him. He may have and doubtless did perform for them valuable services in supervising and managing the farm, but at the same time he was the recipient of benefits fully compensating him for all his labors. He was clothed and educated by them and during the time he lived with them and after he had reached manhood he seems to have accumulated considerable estate, while the farm of the decedent was every year becoming less valuable in its production. After the death of his first wife he returned with his two children and lived with the decedent and his wife and after his sec-

ond marriage they retained the custody of these children and cared for them as if they had been their parents. The second marriage was distasteful to the two old people, and as several children was the result of that marriage they may have thought proper to make Gano's own kin the recipients of their bounty, and not place the estate where they might enjoy it, to whom they were under no obligation, legal or moral, to provide for. There is much testimony conducing to show that Gano knew the nature of the disease that was preying upon him, and that death might overtake him at any moment, still he made no will, and when importuned to make a will with the suggestion that he might desire to give to the children of appellant's first wife a part of his estate, he declined to do so, saying that the law made the best will. Such circumstances as these, surrounding one who was an honest, reliable and prompt man in all his dealings go far to rebut the idea that any agreement was ever made and certainly leaves the mind in such doubt as would preclude the chancellor from depriving these appellees of their lawful inheritance.

It is attempted to be shown by the appellant that the wife of the decedent prevented him from making a will by reason of some superstitious views she had in regard to the matter. Such conduct was inconsistent with her love for the appellant and his children, and having raised them all, with the devotion of a mother, her solicitude for their welfare would have prompted her to have some provision made for them by her husband, as she might have known that in the event of his death without a will his entire landed estate would pass to his own kindred in whom she had no interest, and for whom according to the proof of the appellant she had no affection. It is shown by appellant's testimony that there was no intimacy between Gano and his own kindred, while on the part of those kindred it is shown that the most of them were on the most intimate and friendly relations with them. So the testimony is conflicting with reference to almost every circumstance from which an inference might be drawn as to the existence or non-existence of the facts constituting the principal issue in this case; and even from the testimony on the part of the appellant the court would be reluctant to infer the existence of an agreement entered into between either the appellant or his father and mother with Gano. It is shown that he cultivated the land for the greater part of the time on the shares;

that he accumulated a home of his own from the products of Gano's farm which farm (Gano's) had a rental value of only one or two hundred dollars per annum, and under all the circumstances if there was only a question of compensation involved in this case the chancellor should have dismissed the petition. It is urged, however, that the agreement alleged in the petition is not denied by the answer. The allegations of the petition after reciting the manner of obtaining the child from his parents and the purpose in view, are: "that after plaintiff arrived at the age of discretion the said Gano in pursuance of his purpose agreed with plaintiff, in consideration that he (the plaintiff) would live with him while he was a single man, take charge of his premises, work on the same, in maintaining Gano and his family, he would by last will and testament duly executed, give to plaintiff all his (Gano's) estate, real and personal. The answer admits that decedent took appellant to live with him and being a kind and benevolent man he no doubt promised to do a good part by him, and which in point of fact he did do, but they deny that the decedent promised to raise and adopt plaintiff as his child and to give him for such services as he might render when old enough to render service, his whole estate by will at his death and the death of his wife. They deny that decedent ever so agreed with plaintiff after he arrived at the age of discretion or at any other time, on account of the consideration alleged or any other. They utterly deny each and every allegation of a promise on the part of said Gano that he would by last will duly executed devise to plaintiff his estate real and personal that he had at his death and the death of his wife. They deny that it was in pursuance of such an agreement that plaintiff remained with Gano," etc.

This answer places in issue the truth of the material allegations of the petition and the burden was on the appellant to make out his case. This he has failed to do and the judgment must be *affirmed*.

*W. S. Darnaby, Wm. Lindsay, for appellant.*

*Alvin Duvall, G. S. Wall, for appellees.*