Louisville & N. R. R. Co. v. Pointer's Admr.

---

CASE 114—ACTION BY CHARLES POINTER, ADMR., TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S INTESTATE. OCTOBER 16.

# Louisville & N. R. R. Co. v. Pointer's Admr.

APPEAL FROM WHITLEY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

DEFECTIVE PETITION—GERMANE AMENDMENT—LIMITATION—IMPROPER ARGUMENT—REASONABLE CARE—HARMLESS ERROR—RAILROADS— ROADBEDS—NEGLIGENCE—FELLOW SERVANTS.

Held: The petition in an action against a railroad company alleged the death of plaintiff's intestate in Virginia in an accident caused by the locomotive on which he was fireman running into an obstruction on the track. Plaintiff afterwards tendered an amendment setting out Code Va., sections 2548, 2557, 2902-2904, allowing a recovery by the personal representative of one whose wrongful injuries resulted in death, and providing for the apportionment of any damages so recovered. HELD, that the amendment was germane, since it supplied the lacking ele-

ment of the cause of action, otherwise sufficiently pleaded in the petition.

2. The amendment was not tendered until more than a year after the accident.   HELD, that, since the amendment was germane, the action was commenced at the time of the filing of the petition and service of summons, and was within the statute of limitation.

3. Defendant's answer alleged that only one large rock fell on and obstructed the track.   Plaintiff, in the amended petition, admitted this.   At the beginning of trial, and after plaintiff had taken the depositions of many witnesses, constituting the bulk of his case, defendant tendered an amendment setting out that it was a large mass of stone and dirt which fell.   No good reason was presented why defendant, in possession of the facts by its servants, should not have accurately set out the facts earlier.   HELD, that the tender of the amendment was properly rejected.

4. Counsel for plaintiff in his closing argument read to the jury an extract from a paper that another jury had rendered a verdict against the company for $15,000 for the death of a passenger. Counsel was promptly reprimanded by the court, who instructed the jury not to consider the extract.   The jury returned a verdict for $5,000.   HELD that, no improper influence having been shown by the verdict, defendant was not prejudiced by counsel's conduct.

5. It was not error for the court to use the words "reasonable care," instead of "ordinary care," in an instruction setting out the care required by defendant's servants in the inspection of a cut through which the track ran.

6. The jury were instructed that if they found for plaintiff, the administrator, they might determine what proportion of any damages recovered should go to the father or mother of the deceased. There was some question whether, under the Virginia statute, they were entitled to direct any portion to be given to the mother.   A proper instruction as to measure of damages was also given.   HELD, that such mention of the mother, even if error, could not be considered to have influenced the jury to consider her needs in fixing the amount of their verdict, and was harmless to defendant.

7. Under the law of Virginia, the maintaining of a safe roadbed by a railway company is a duty in the performance of which a servant is a vice principal, for whose neglect, resulting in the injury of another servant, the company is responsible, and not a fellow servant.

J. W. ALCORN, FOR APPELLANT.

The plaintiff's original petition showed that the death of plaintiff's intestate occurred in Virginia, but it contained no reference whatever, to any law of that State which gives a right of action for damages for the death of a person by reason of a negligent or wrongful act of another.

As thus framed, the petition stated no cause of action, because, at common law, no such right of action exists, and, in the absence of an allegation to the contrary, the presumption was that the common law obtained in Virginia. The failure to plead or even to refer to any law to the contrary of the common law, as the law of Virginia, is not such a mistake as the code allows to be corrected by amendment. It was an omission, and, construing it most strongly against the pleader, as is the rule, it was an intentional omission and not even a mistake as to the law much less of fact.

The amended petition wholly fails to explain why that omission was made, therefore, if amendment to that petition were not forbidden by that well established rule, even under code pleading, that a petition which states no cause of action can be amended, it could not be amended on the ground of mistake of fact, because it distinctly alleges that the accident and death occurred in the State of Virginia. And it could not be amended on the ground of mistake of law, because it shows an omission to rely on the Virginia Statute.

But even, if, under the liberal provisions of the Code of Practice, it was subject to amendment because of that omission, the amendment which was offered presented no right of action which then existed in favor of plaintiff, under the Virginia Statute, because the statute which created the right, also limited the time for instituting the action, and that time had expired when the amendment was offered.

### AUTHORITIES CITED.

Labatt v. Smith, 83 Ky., 599; Honore v. Hutchings, 8 Bush, 687; Miles v. Collins, 1 Met., 311; Shearman & Redfield on Negligence, sec. 131; Cooley on Torts, sec. 266 and cases cited; Whitford v. R. R. Co., 23 N. Y., 465; Hansford v. Payne, 11 Bush, 380; Eden v. R. R. Co., 14 B. M., 205; Am. & Eng. Ency. of Law, vol. 1, p. 689; 119 U. S., 199; Taylor v. Cranberry Iron Co., 94 N. C., 525; Brewer v. Hill, 9 R., 329; Finnell v. Ry. Co., 33 F. R., 427; Boyd's Admr. v. Clark, 8 F. R., 849; Civil Code, sec. 134; Am. & Eng. Ency. Pl. & Pr., vol 1, p. 510; Bolton v. Ry. Co., 83 Ga., 659; N. C. & St. L. R. R. Co. v. Turner's Admr., 78 Tenn., 351; N. & W. R. R.

Louisville & N. R. R. Co. v. Pointer's Admr.

Co. v. Nuckol's Admr., 91 Va., 193; Russell Creek Coal Co. v. Wells, 96 Va., 416; McHenry Coal Co. v. Snedden, 98 Ky., 686; Needham v. L. & N. R. R. Co., 85 Ky., 423; Quaid v. Cornwall, 13 Bush, 601; Bruce's Admr. v. R. R. Co., 83 Ky., 174; Valz v. Bank, 96 Ky., 549; Gregory v. R. R. Co., 20 Mo. App., 448; Mo. Lumber Co. v. Zeitenger, 45 Mo. App., 114; Mulvin v. Smith, 12 N. H., 462; Parmalor v. Savannah R. R. Co., 78 Ga., 239; Ex. Cotton Mill v. Western R. R. Co., 83 Ga., 441; Hamberger v. Pac. R. R. Co., 43 Mo., 196; Hurst' v. Detroit R. R. Co., 84 Mich., 539.

C. C. WILLIAMS AND W. G. WELCH, FOR APPELLEE.

The principal questions in this case are:

1. Was it error to permit the filing of the amended petition pleading the Virginia statute?

2. Was it error to sustain plaintiff's demurrer to defendant's plea of limitation?

We concede the rule to be that common law liabilities and statutory remedies are generally deemed separate grounds of action not to be substituted one for the other by amendment." But there was no common law liability in this case. The common law, at no time, ever imposed a civil liability for the killing negligently or intentionally of another. The original petition set up either a defective, imperfect statutory cause of action, or it set up none at all. The averment of the injury in Virginia, of the negligence causing it, and the prayer for relief makes it of necessity an action under the Virginia statute. If' it had been filed in that State, the petition would have been good, because the courts there take cognizance of the Virginia statute. Being filed in this State it was not good because the Virginia laws are facts which must be pleaded and proved, and the omission of this material fact made the petition demur-rable.

When amended, the amendment relates back to the original petition, and the date of its filing is the date from which the statute of limitations should be counted.

The rigorous artificial rules of pleading at the common law are happily swept away by the code pleading of modern times. The courts no longer take pride in the ingenious hair-split-ting subtleties, but look steadily and solely to the proper end of all laws and of all courts, "the furtherance of justice," and will always permit "the truth of the matter" to be shown.

### AUTHORITIES CITED.

Civil Code, sec. 73-92, subsec. 4; Sherrill v. C. O. & S. W. R. R., 89 Ky., 304; Cin S. R. R. v. Bruce, 83 Ky., 178; 13:

R., 781, 902; Ency. Pl. & Pr., vol. 1, 509, vol. 6, 376; I. C. R. R. Co. v. McDonald's Admr., 13 R., 781; Lex. & Carter Co. Mining Co. v. Stephens' Admr., 20 R., 696; McKinney on Fellow Servants, sec. 136; Am. & Eng. Ency. Law (2d ed.) vols. 12, 933, 939; N. & W. R. R. Co. v. Nuckols, 91 Va., 193; Same v. Houchins, 95, Va., 398; McKee v. Hays, 9 R., 288; N. R. R. Co. v. Foster, 11 Am. & Eng. R. R. Cases (old series); Maxwells Code Pleading, p. 583; Joyes v. Hamilton, 10 Bush, 546.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Charles Pointer, a fireman on one of appellant's locomotives, was killed 17th March, 1899, in Lee county, Va., by the wrecking of his train. A large rock, or quantity of rock and dirt, slipped from the side of a cut through which the railroad passed, and, not being discovered in time, the train ran into it. The train was derailed, and appellee's intestate was scalded and otherwise injured by the overturning of the locomotive, from which injuries he died. On March 8, 1900, this suit was filed in the Whitley circuit court by his administrator to recover damages for his death, it being alleged that the accident was caused by the negligence of appellant, its agents and servants, in failing to remove the stone and debris from the side of the cut in time to have prevented the slip. It was charged that appellant knew, or by the exercise of ordinary care could have known, of the existence of the danger in time to have averted the accident. The answer denied the negligence charged, and alleged that, instead of being a mass of stone and dirt, there was but one stone that fell, and that appellant had no knowledge or notice of its dangerous condition in time to have prevented its falling, and could not have known it by the exercise of ordinary care. Later, but not within a year of the death of appellee's intestate, appellee tendered an amended answer in which he admitted that there was but one stone that fell, instead of a large

mass of stone and dirt. He also charged for the first time that there was a statute of Virginia allowing a recovery for the death of one produced by the negligence of another. The statute was set out in *haec verba*, and is as follows:

Code, section 2902. "Whenever the death of a person may be caused by the wrongful act, neglect or default of any person or corporation. . . . and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action . . . then, and in every such case the person who or corporation . . . which would have been liable if death had not ensued, shall be liable to an action for damages."

Sec. 2903. "Every such action shall be brought by and in the name of the personal representative of such deceased person, and within twelve months after his or her death. The jury in such action may award such damages as to it may seem fair and just, not exceeding ten thousand dollars, and may direct in what proportion they shall be distributed to the wife, husband, parent and child of the deceased."

Sec. 2904. "The amount recovered in such action shall after the payment of costs and reasonable attorneys' fees be paid to the wife, husband, parent and child of the deceased, in such proportion as the jury may have directed, or if they have not directed, according to the statute of distribution; and shall be free from all debts and liabilities of the deceased; but if there be no wife, husband, parent or child, the amount so recovered shall be assets in the hands of the personal representative to be disposed of according to law."

Sec. 2557. "When any person shall be intestate as to his personal estate, or any part thereof, the surplus . . .

after payment of funeral expenses, charges of administration and debts shall pass and be distributed to and among the same persons and in the same proportion, to whom and in which real estate is directed to descend."

Sec. 2548. "When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary of such of his kindred male and female, as are not alien enemies, in the following course: First, to his children and their descendants; second, if there be no child, nor the descendant of any child, then to his father."

To the filing of this amendment, appellant objected. The court, notwithstanding, permitted it to be filed. A demurrer to it was overruled. A demurrer was sustained to appellant's plea of limitation of one year interposed in avoidance of it. All these rulings raise but the one question, Was the amendment germane to the original cause of action sued on—therefore relating back to the time of the filing of the original petition, so as to save the running of the statute?

The position of appellant is that the original petition, showing affirmatively that the injury and death occurred beyond this State, and in the State of Virginia, and not stating or intimating that there existed in Virginia a statute allowing a recovery for death, stated no cause of action; that we must presume, in the absence of allegations to the contrary, that the common law, only, is in force in Virginia, where the negligent act and death are laid (Valz v. Bank, 96 Ky., 549 (16 R., 624) (29 S. W., 329) (49 Am. St. Rep., 306); the common law not allowing a recovery for the negligent injury of another resulting in instant death (Eden v. Railroad Co., 14 B. Mon., 204; Hansford's

Adm'x v. Payne, 11 Bush., 380), and the statute of Kentucky allowing a recovery for such negligent act and consequent death can not have any extraterritorial force, and can not, therefore, embrace an act occurring out of the State (Bruce's Adm'r v. Railroad Co., 83 Ky., 174) (7 R., 59). It is the argument of appellant that an amendment can not be allowed to state for the first time a cause of action under a statute by way of amendment to a cause of action sued on under the common law. Gregory v. Railway Co., 20 Mo. App., 448; Bolton v. Railway Co., 83 Ga., 659 (10 S. E., 352). The latter case is mainly relied on as an authority most clearly in point. It that case it was said: "Whenever a suit is commenced in this State, and the plaintiff relies for his right of action and his recovery upon a foreign statute, he must plead said statute. If he pleads it defectively, or shows in some way that he relies·upon it, he will be entitled, under our Code, to amend by setting out the statute. . . . If, however, he commences his action and relies upon his common-law right, we do not think he can amend his common-law declaration by setting out the statute," etc. · We find ourselves unable to agree entirely with the learned Georgia supreme court. · Aside from the criticism of this case in Maxw. Code Pl., 579, that application of the rule as affecting amendments does not satisfy our conception of the spirit of code pleading, nor does it appear to be supported by other authority. It is truly said that, unless there was a statute allowing a recovery in this case, then no recovery could be had; for the common law allowed none. The cause of action, however, was not the statute, but the negligent act causing the death sued for. The proper parties appear. The one entitled in fact to bring this suit does so. The cause of the accident, the negligence, its result, and the pleader's claim

for relief are all set forth. Each of these statements is equally with every other one essential to the right of recovery—neither less nor more so than the allegation of the existence of the Virginia statutes. If the injury had occurred in this State, of course, the statute need not have been pleaded. But foreign statutes conferring rights must be pleaded, as any other necessary fact upon which the recovery may be based. Valz v. Bank, supra; Templeton v. Sharp (10 R., 499) (9 S. W., 507, 696). The plaintiff was attempting to set forth in this petition his cause of action against appellant. Not a cause that did not exist (at common law), but the one that did exist, and that necessarily must have been based upon some statute. He alleged a number of essential facts, but omitted one. By this amendment he supplies the one omitted. This does not change the parties, nor the nature of the action, nor the cause of it. It merely perfects that which before was imperfect for lack of that averment. Such is the proper office of all amendments. A true test whether they are germane to the original cause of action attempted to be set out is, would a recovery upon the original action have been a bar to a suit upon the one set out in the amendment? .

But it is argued that, as no cause of action was stated in the petition. there was nothing to amend by. And as there was no cause of action stated till the amendment was filed, it was really the beginning of the suit, at which time limitation had become a bar. This much may be said in one sense, of all necessary amendments. A plaintiff will not be allowed to amend his cause of action by changing it. The office of the amendment is to perfect or complete that which is begun, but is incomplete. "The Civil Code, with a view to a trial upon the merits and the attainment of justice, allows great liberality in this respect, and the lower

court should not be controlled in the exercise of power unless it be manifestly abused." Filbin's Adm'r v. Railroad Co., 91 Ky., 446 (13 R., 14) (16 S. W., 92); Greer v. City of Covington, 83 Ky., 416 (7 R., 419). As to what will form a basis as a sufficient statement of the original cause of action, upon which perfecting amendments will be allowed, the courts have had numerous instances before them. In Ellison v. Railroad Co., 87 Ga., 710 (13 S. E., 813), that court has again passed upon this question. We construe this case as overruling Bolton v. Railway Co., 83 Ga., 659 (10 S. E., 352), the two being in conflict. In the case of Ellison the court undertook a more exhaustive review of the doctrine of amendments under the Code, and took occasion to say: "The case of Martin v. Railroad Co., 78 Ga., 307, is overruled, and so is any and every other case, in so far as the judgment of affirmance or reversal rests upon the construction herein reviewed and disapproved." The court then proceeded to lay down the rule below, which is fairly and well stated: "There must be some trace of a particular cause of action in the declaration, in order that it may contain enough to amend by. . . . When a cause of action appears in a declaration, that, and that only, is the one which the pleader is supposed to have designed. When none apears, the design is to be sought in the light of what is alleged in the declaration, compared with what is alleged in the proposed amendment. If the two sets of allegations harmonize so as to be parts of one and the same sufficient design, and so as to fill out that design and render it as complete on paper as the law requires it to be, the amendment is germane, and must be allowed. . . . The least amount of substance in a declaration, which will serve to show that what is offered to be added rightly belongs

there, is enough to amend by, if the addition proposed would make the cause of action complete." If the original and amended petition form the right of plaintiff to relief on different or inconsistent titles or grounds, or upon entirely inconsistent claims, arising out of different states of fact, the amendment would not be germane. The supreme court of New York, applying a Code provision almost identical with ours (section 134 Civil Code), in a case where the plaintiff had failed to set out a foreign statute giving the right of recovery, allowed an amendment pleading the statute. Lustig v. Railroad Co., 65 Hun., 547 (20 N. Y. Supp., 477). Also, see Chander v. Transfer Co. (City Ct. N. Y.), 13 N. Y. Sup., 573; also Davis v. Railroad Co., 110 N. Y., 646 (17 N. E., 733). Railway Co. v. Foster (Tenn. 1882) 11 Am. & Eng. R. Cas. (O. S.), 180, was a case involving, in one sense, this question. That suit was in Tennessee. It developed that the accident had occurred in Alabama. Plaintiff was allowed to amend and set up the statute of Alabama allowing the recovery. In that case the statutory period of limitation for bringing the action had not run when the amendment was tendered. Counsel for appellant seeks to distinguish this case on that ground. We fail to perceive wherein it is not authority. For the question is, is the amendment germane to the original cause of action? If it is, then the queston of limitation necessarily will be referred to the time of the "commencement of the action." In Bank of Louisville v. Board of Trustees of Public Schools, 83 Ky., 219 (7 R., 185), the action was brought under a statute (the act of April, 1882) providing that certain deposits, where the depositors had not been heard of for eight years, and had not exercised any act of ownership over them, should escheat to the Commonwealth for the benefit of public schools

of the city of Louisville. An amendment was allowed that sought to recover these deposits as escheats on a different statutory ground, viz., that the depositors had died without heirs or distributees. To the same effect, see Railroad Co. v. Case's Adm'r, 9 Bush, 731.

We are of opinion that the amendment in the case at bar was germane to the original cause of action; that the filing of the petition, and issual of the summons thereon, was the commencement of this action (Code, section 39); and that the period of limitation fixed by the Virginia statute had not then run. The court's ruling was proper, both as to filing the amendment, and sustaining the demurrer to the plea of limitation filed to it.

Appellant offered to file at the beginning of the trial an amended answer in which it averred that the accident was caused, not by the falling of one large rock, but by a slip in the side of the cut of a large mass of rock and dirt. The court refused to permit this amendment, and of that ruling appellant makes serious complaint. As has been stated, the accident occurred in Lee county, Va., and the trial was had in Whitley county, Ky., probably more than a hundred miles distant. Appellee, in the development of his case, had taken the deposition of a dozen or more witnesses living in the vicinity where the accident occurred; this evidence constituting the bulk of appellee's case. The evidence was taken upon the issue as then formed, and as it had stood for some time. To allow its change at the beginning of the trial was to have practically destroyed the evidence taken on this point. At least, it would have necessarily resulted in a further postponement of the trial. In Eskridge's Ex'rs v. Railway Co., 89 Ky.. 367 (11 R., 557) (12 S. W., 580), in the original petition it was stated that the injury was caused by the neg-

Louisville & N. R. R. Co. v. Pointer's Admr.

ligence of those in charge of the south-bound accommodation train, but in the amended petition filed before answer it was stated to have been caused by the willful negligence of the servants of appellee in charge of the south-bound express train, which passed before the other; and one of the alleged errors was the refusal of the court to permit the plaintiff to file a second amended petition, in which it was stated, as in the original, that the south-bound accommodation train caused the injury. The motion to file the last-named pleading was made after the jury was sworn and some witnesses had testified. The court overruled the motion, and this ruling was affirmed on appeal. The court used this language: "For, the issue having been made up and partly tried as to negligence of those in charge of the express train, it would have been obviously prejudicial to the defendant to allow it then changed." It seems to us that the two cases are so nearly parallel in point of circumstance and reason that the one cited must be held conclusive of the proper practice in the one at bar. It would have been not only manifestly unjust to appellee to have allowed a change of the issue at that late date, but there is not a sufficient reason shown why appellant might not have accurately set out the facts either in its original answer or earlier. Its servants and agents in charge knew, as a matter of fact, and within a few hours of the occurrence, exactly whether it was a large mass of rock or the falling of a single rock that caused the wreck. And while it may not have been the fault of counsel that he was not earlier apprized of this true state of affairs, yet it necessarily was the fault of his client that he was not so apprised.

In the concluding argument to the jury, counsel for plaintiff read to the jury a statement published in a daily newspaper that within a day or two previous to the trial a jury

in another county in this State had rendered a verdict against the same defendant for $15,000 for the death of a passenger—Mrs. Carothers. This conduct was objected to by appellant's attorney. The court promptly reprimanded counsel making the argument, and explicitly charged the jury that it was improper, and that they should not consider it in forming their verdict in this case. While it may be true that there might exist a state of case where such an improper digression by counsel in the closing argument may have had its hurtful effect, and be beyond the power of the court to remedy by its cautioning charge, and that in such state of case this court would not be authorized to speculate as to the probable effect of the improper matter, but would order a new trial (Coal Co. v. Sneddon, 98 Ky., 686 (17 R., 1261) 34 S. W., 228), yet we do not regard such to have been the result, or even the probable result, in the case at bar. The verdict returned by the jury ($5,-000) as compensation for the destruction of life and the power of the decedent to earn money (he being a young man, about 22 years of age, in good health, and earning $60 or $75 per month) shows of itself that the jury were not improperly influenced, or influenced at all, by the matters referred to. The only improper effect of the newspaper article would have been to incite the jury to have rendered an excessive verdict. The verdict in this case is not excessive, and it is not claimed to be. We fail to see that appellant was prejudiced by the proceeding in question.

A part of the instruction given to the jury, of which complaint is made, is as follows: "If you believe from the evidence that at the time the accident occurred, resulting in the death of Charles Pointer, said stone was unsafe, dangerous and liable to fall, and that the section foreman knew,

or by the exercise of a reasonable care and prudence in the inspection of the cut could have known, that the same was in such dangerous and unsafe condition in time to have removed same before the injury to Pointer," etc. The criticism of the instruction is that the court used the words "reasonable care" instead of "ordinary care." In the argument counsel admits that the terms are, in law, practically synonymous. In their ordinary use, in connection with the subject in hand, they are also substantially synonymous. It can not be that the jury could have been misled thereby to have found that the railroad company was required to use more than ordinary care because it was required to use reasonable care. Ordinary care is reasonable care. If ordinary care were less than reasonable care, it would be rejected by the courts as the standard of conduct of those charged with the duty imposed upon appellant as an operator of a steam railway, for the courts would not permit such a one to escape liability upon the exercise of less than what would be reasonable care toward those in its employ. The terms are used as synonymous or interchangeable in many of the cases. See cases collected 12 Am. & Eng. Ency. Law (2d Ed.), p. 912.

Another objection to the instructions is that they say to the jury, "if you find for the plaintiff; you may say in your verdict what proportion of the sum so found shall go to the father or mother of the deceased." This instruction, of course, was predicated upon the Virginia statutes, supra, which provides that, in case of the intestacy of the decedent without wife or issue, the recovery should "be apportioned to the parent in such proportions as the jury may have directed." Under section 2548 of the Virginia statute, supra, it was shown that if there was no child, nor the descendant of any child, then the estate was to go to his father.

Appellant insists that including the intestate's mother in
this instruction was improper and prejudicial, because it
permitted the jury to consider her claims and possible ne-
cessities, etc., and that they likely did so in estimating
their verdict.   It should be noted, however, that the court
restricted the jury, in the first place, that, if they found
for appellee, they should "find for him such a sum in dam-
ages as you may believe from the evidence will fairly com-
pensate him for the loss of the life of his intestate, Charles
Pointer; and you may measure such damages by the abil-
ity of the deceased to earn money, taking into consideration
his age, physical condition, mental capacity and prospect of
life, as they appeared in evidence, provided that the finding
shall not exceed ten thousand dollars."   If the jury obeyed
the instructions of the court, as it was their duty to do,
and as they did, so far as anything in this record discloses,
they were not at liberty to take into consideration the fact
of decedent's having a mother alive, or of her needs or re-
quirements, in estimating the size of the verdict.   But
after the compensation had been agreed upon, as defined
by the instruction, then the jury were permitted by the
further instruction of the court to apportion the sum so
found among certain persons, to-wit, the father and mother
of the decedent.   If this was error, it affected the father
alone, or possibly the funeral creditor of the deceased.   As
no objection comes from either of these sources, we can not
see that appellant is prejudiced by the form of the instruc-
tion.

The remaining question for decision is upon appellant's
plea that under the laws of Virginia, where the accident
occurred, and by which, of course, the recovery must be
regulated, the deceased and section foreman or track re-
pairer were fellow servants; that the law of Virginia did

not allow one servant injured by the negligence of a fellow
servant to recover therefor from the master. The follow-
ing cases were used in evidence below, and are referred to,
as embracing the law of Virginia upon that subject: Moon's
Adm'r v. Railroad Co., 78 Va., 745 (49 Am. Rep., 401);
Railroad Co. v. Nuckol's Adm'r, 91 Va., 193 (21 S. E., 342);
Locomotive Works v. Ford, 94 Va., 627 (27 S. E., 509); Rail-
road Co. v. Houchins' Adm'r, 95 Va., 399 (28 S. E., 578,
46 L. R. A., 359, 64 Am. St. Rep., 791); Coal Co. v. Wells,
96 Va., 416 (31 S. E., 614). The law upon this vexing ques-
tion, as it is applied in Virginia, according to the opinions
in the cases, supra, delivered by the supreme court of ap-
peals of that State, is far more liberal to the master than
obtains in this State and some other jurisdictions. It is
not our purpose, however, to enter upon a criticism or an
analysis of the reasons for this distinction. It exists prob-
ably as much in policy as in principle. In the Moon case,
78 Va., 745 (49 Am. Rep., 401), a brakeman upon a train
was injured by the negligence of a track repairer, in having
the track in defective condition, so as to wreck the train.
The brakeman was allowed to recover. The court held
that: "Where a person is placed in charge of the 'construc-
tion or repair of machinery,' or 'dispatching of trains,' the
'maintenance of way,' etc., he is not a fellow servant with
those under him, nor with those in a different depart-
ment of the company's service. He is the agent of the
company, which has assumed, through him, the perform-
ance of duties which are absolute and imperative, the omis-
sion or the negligence of performing which the law will in
no wise excuse." In the Nuckol case, which seems to have
been one thoroughly considered by the court, wherein it
entered upon a re-examination of numerous previous de-
cisions of that court bearing on this subject, Moon's case,

supra, was approved, although the court was then inclined
to the opinion that the former case should have been rested
upon the negligence of the company in failing to provide a
safe and suitable track, rather than upon the negligence
of the track keeper in failing to give a signal to the ap-
proaching train. The Nuckol case was followed and ap-
proved in Ford's case, 94 Va., 627 (27 S. E., 509). Moon's
case, as interpreted in the opinion in Nuckol's case, supra,
was approved in the Houchins' case, 95 Va., 399 (28 S. E.,
578, 46 L. R. A., 359, 64 Am. St. Rep., 791). The Virginia
court does not seem to recognize degrees or grades of ser-
vice in which servants may be employed as affecting the
master's liability for their negligence to their fellow ser-
vants, but rests that liability upon the nature of the em-
ployment in which the servants may be engaged, without
respect to their grade. In those matters wherein the duty
was peremptorily that of the master, as, for example, fur-
nishing safe machinery or appliances, and, in case of rail-
way companies, safe roadways, and in maintaining same,
that court holds to the doctrine that these are the master's
duties, and can not be delegated, and that, when performed
by his servant, the servant so doing them is a vice princi-
pal, and for his neglect, from which an injury results to
another servant of the master, the latter may recover from
the principal. Such was the finding of the circuit court in
this case as to the law of Virginia.

The verdict is fully sustained by the evidence and plead-
ings. Judgment affirmed, with damages.