JUDGE HARDEST
demvered the opinion of the court.
These causes, involving facts and interests in some respects identical, having been heard together, will be so decided.'
George Myles died in 1866, owning a tract of about one hundred and forty-seven acres of land in Shelby *239 County, on which, he resided, and other property, including the proceeds of the estate of his son Henry R. Myles, who had died in the state of California without issue and intestate, leaving his father his heir.
Said George Myles had been twice married, having by the first marriage, beside said Henry R. Myles, two other sons — Thomas H. and William P. Myles — who survived him, and were his only living children at his death. He left Isabella Myles, his widow, by whom he had had one daughter, Mary Jane Myles, who, after becoming the wife of William Keizer, died childless in 1864. Keizer and wife resided with George Myles at her death, and Keizer continued to live with Myles till the death of the latter.
Said decedent left a will, executed after his daughter’s death in 1864, by which he devised his farm to his wife for life, and the remainder in fee to Keizer; but this and other devises to said Keizer were made, partly at least, in consideration of his services and labor on the testator’s farm, and on the condition that he would continue to live with and take care of the testator and his wife, and the survivor of them, until the death of each of them.
And the testator, with a view to equality in the provisions of his will between Keizer and his two sons, devised to them four fifths of said estate in California; and to render this purpose certain he afterward provided, by a codicil to his will, that if an equal division should not be attained by the devises of the will, which were made on his estimate of the estate in California, said devises should be made equal by payments to those receiving least, according to said devise.
Thomas H. Myles brought his suit in equity against the other devisees and the executoi’s of George Myles, deceased, alleging that on or about the 24th of September, 1846, George Myles contracted with him to take care of *240 his family, and work upon and manage the farm; “and in consideration thereof, and as compensation therefor, agreed to pay him what his services for the care, management, and work and labor aforesaid should be reasonably worth; and further, that he would provide for the payment of the same by a special provision in his last will and testament. That, in compliance with said agreement, plaintiff did take care of the family of said George Myles, deceased, managed his farm, and did work and labor on the same from the 24th day of September, 1846, to tbe 31st day of December, 1860, and his services therefor were and are reasonably worth four hundred dollars per annum; that is to say, up to the date last aforesaid, the sum of five thousand seven hundred dollars. That from the 31st day of December, 1860, to the 31st day of December, 1863, and during the whole of said time, plaintiff was ready and willing and offered to comply with all the terms of the contract aforesaid; but the said Geotge Myles during all the time last aforesaid refused and would not permit plaintiff to comply with the contract aforesaid, by reason whereof plaintiff says the estate of said George Myles, deceased, is indebted to him in the further sum of four hundred dollars per annum; that is to say, in the sum of twelve hundred dollars.”
The petition further alleged that the estate of George Myles was also indebted to the plaintiff in the sum of one thousand dollars for services rendered and expenses incurred in the settlement of the estate of Henry H. Myles, deceased, in the state of California, under a power of attorney from George Myles. And the-plaintiff filed with his petition an account of his claims, amounting to seven thousand nine hundred dollars, for which, subject to a credit of fifty-one dollars, he sought a recovery against the estate of said decedent for the reasons, with the others *241 alleged, that said George Myles had failed to provide by Ms will for the payment or compensation of the plaintiff according to said contract, and he and his executors had failed otherwise to satisfy said claim, or any part of it.
T3y the answers of the executors and of Isabella Myles and Keizer the following grounds of defense were presented :
1. That the alleged contract was not made.
2. The averments of services rendered by the plaintiff and their value were controverted.
3. The contract, if made, was embraced by the statute of frauds, and could not be enforced.
4. For all services rendered by the plaintiff" he was compensated from the products of the farm.
5. If the alleged contract was made it was rescinded by the parties, and satisfaction made to the plaintiff" for the services he had rendered.
6. Whatever undertaking George Myles may have made was performed by the bequests to the plaintiff in his will.
7. The action was barred by limitation.
After a somewhat elaborate preparation the cause was referred to a commissioner, who made a report sustaining the alleged contract, and the claim for services thereunder from 1854 to 1860, estimated as of the value of two thousand five hundred dollars; the report expressing the conclusion that George Myles accounted to the plaintiff, upon a settlement in 1854, for previous services. The report also sustained the claim of one thousand dollars for services in California, but rejected the claim for compensation under said contract for the period of time commencing on the 31st of December’, 1860, and ending three years thereafter.
The court overruled exceptions filed by both parties to said report, and rendered a judgment in favor of the plaintiff for tlxree thousand five hundred dollars, less the *242 credit of fifty-one dollars, and the further credit of one hundred and eighty-seven dollars, as for a balance due from plaintiff upon collections made in California. From that judgment said executors and Isabella Myles and Keizer have appealed to this court, and the appellee prosecutes a cross-appeal.
The appellants complain of the judgment on all the grounds indicated by our statement of the defense; and on the other side it is insisted for the appellee that the court erred in rejecting his claim for services rendered before the supposed settlement in 1854, and under the contract after the year 1860, and in estimating his services for the residue of the time at a less sum per annum thau claimed in his account.
There is a contrariety of evidence as to the principal questions of fact presented for our determination; but we think the following conclusions may be deduced from the evidence with reasonable certainty: .
1. That in or about the month of July, 1846, the appellee, being then of age, and Henry R. Myles and William P. Myles having left their father, George Myles induced the appellee to remain with him, manage his farm, and labor on it for the support of his family, by promising him to compensate him, if he so remained during the life of George Myles, by devising the farm to him, but in such manner as to charge the appellee with the maintenance of said Isabella Myles till her death, should she survive her husband.
2. On the faith of said promise, and with the expectation that George Myles would comply with his agreement, the appellee continued to live with his father, and was the principal manager and laborer on the farm, with short intermissions, from July, 1846, till about December, 1860; and although it appears that he was absent from the farm, *243 and engaged in the business of Thomas Jefferson & Sons, in Louisville, for about two months in 1849, he went with his. father’s approval and returned at Ms instance. And though in 1854, in consequence of some difference between him and George Myles, he left the farm again and went to a distant county, he was soon induced to return by a repetition of his father’s promise that for his services he should have the farm at Ms father’s death. And notwithstanding some evidence in the cause conducing to show a settlement between the parties in 1854, it is abundantly proved that no adequate compensation was made to the appellee for his previous services.
3. The failure of the appellee to continue in the service of George Myles after 1860 was not the consequence of any accepted or recognized rescission of the contract, nor the fault of the appellee; but it was induced by a change in the feelings and wishes of George Myles, incident to his advanced age, perhaps, or by the altered relations of Ms family after the marriage of Ms daughter with Keizer, who, it appeal’s, took the place of the appellee in the management of the farm.
4. In view of the fact that the land did not much exceed five thousand dollars in value, and the agreement made in 1849 contemplated the support of Isabella Myles as well as of George Myles for life, and it was necessary, from the very nature of the ease, that during all the time the dppellee should derive from the products of the farm the means of providing clothing and ordinary expenses for himself, which must have greatly diminished the sum per annum which he was entitled to claim as wages, it seems to us the sum of two thousand five hundred dollars estimated by the commissioner as for services from 1854 till the end of the year 1860 was too large; but while we concur in the conclusion that, under all the circumstances *244 of the case, nothing was due to the appellee 'under the contract to render service on the farm after the year 1860, it does not appear to us that any such settlement was made in 1854 as should have operated to bar the claim of the appellee for services rendered before that time.
If therefore the appellee was entitled to any recovery for services under said contract, it seems to us his services should have been estimated from July, 1846, and not merely from a period In 1854. There is much difficulty in determining, from the evidence in this case, what the appellee’s services were reasonably worth to George Myles per annum, after deducting the amount of his necessary expenses. Most of the witnesses seem to have estimated his services without reference to this deduction, and as if the appellee had derived his expenses from some other source than the products of the farm; and no separate inquiry seems to have been made as to the annual amount of such expenses.
"Placing a fair and reasonable estimate on the appellee’s services per annum, according to the weight of the evidence, it is not probable that, after paying for his clothing and his other necessary expenditures, he could have saved from his annual compensation more than $2,500, which was allowed him by the commissioner, though on a different basis; yet we think the evidence authorized an estimate of that sum for the entire services of the appellee under said contract; ,and although we do not accept 'hie basis of the commissioner’s report, we concur in his conclusions. It seems to us the evidence authorized the allowance of $1,000 for services in California.
Having indicated our views of the facts, we proceed to consider whether the agreement of George Myles was legally obligatory as a contract; and if it was, whether he performed it by the provision made for the appellee in *245 his will; and if he did not, was the appellee’s right of action barred either by the statute of frauds or of limitations ?
Although it is a general principle that when one party performs services for another, under the expectation of receiving a legacy, without any definite agreement or understanding as to the nature and amount of the legacy, no absolute obligation is thereby created; yet it is equally well settled- that compensation may be recovered by a party who has advanced money or performed valuable services in faith of a legacy, provided it is clearly proved that there was an absolute promise, upon such consideration, to leave the party a certain and definite legacy. (Redfield on the Law of Wills, part 2, pp. 281-2.) It has been shown from the evidence that G-eorge Myles expressly promised to devise his farm to the appellee in consideration -of his services; and although this promise is not in precise terms set forth in the petition, it is substantially so by the averment of a .promise to make a reasonable compensation by a special provision in the will of G-eorge Myles. . An absolute obligation is therefore alleged and proved. But was it performed by the provisions of the will? A negative answer to this question is clearly deducible from the facts that the provision made is not ejusdem generis with that which was promised, and was manifestly made for a different object than the discharge of any obligation which could be enforced. (2 Story’s Equity, sec. 1109; Claud and wife v. Clinkenbeard’s ex’rs, 8 B. Mon. 897.)
Nor was the contract within the interdiction of the statute of frauds, either as a contract for the sale of land or an agreement which was necessarily not to be performed within one year. The right of action in this case does not rest on any power to enforce a specific perform- *246 an.ce of the contract, for that is impossible; but it results from the non-performance of the agreement to compensate the appellee for his services by a special testamentary provision. And as the time of the performance of the contract might by the death of George Myles have been within one year, the agreement does not come within the provision of the statute relating to promises not to be performed within a year. (King’s ex’rs v. Hanna, 9 B. Mon. 369.) Neither was the action barred by limitation, for the obvious - reason that, according to the terms of the contract, no right of action could have accrued before the death of George Myles.
But still, upon another ground, it is insisted that the judgment is erroneous, and that is based on the supposition that if the provisions of the will of George Myles in favor of the appellee did not strictly constitute a performance of the contract, they were nevertheless a satisfaction thereof, upon the acceptance of the provisions of the will; and the appellee, having elected to receive the devises made to him, was thereby estopped from asserting a claim for the non-pei'formance of the contract. This would be so, we have no doubt, if the provisions in favor of the appellee had been made for the purpose of satisfying said obligation of the testator; but, as already suggested, they sufficiently appear to have been prompted by a wholly different motive. "We are therefore of the opinion that the assertion of the plaintiff’s claim in this action is not inconsistent with his rights as a devisee under the will.
It results that no available' error is perceived in the judgment in the suit of Thomas H. Myles against George Myles’s executors and devisees, and that judgment will be affirmed.
It remains to dispose of the appeal of Myles’s executors against Myles.
*247 In January, 1867, said executors brought this suit, setting forth that after the death of Henry R. Myles, which occurred in the year 1868, George Myles being the heir to his estate, amounting as alleged to at least $17,452.48, by letters of attorney constituted the appellee his agent to go to the state of California, where H. R. Myles was domiciled at his death, there to settle with and receive from the administrator of said estate the amount in his hands, and to sell the real estate of said decedent and receive the proceeds for George Myles. And the plaintiffs alleged that under said power the defendant sold real estate in California amounting to $9,000 in gold coin, $3,000 of which was paid down; and that he received into his hands a large amount of other estate as the attorney, in fact, of George Myles, the amount of which they were unable to state, the defendant having failed to exhibit any account thereof either to George Myles "before his death or to the plaintiffs since. They sought therefore to compel the defendant to disclose and finally pay over the amount of said estate in his hands.
The appellee in his defense denied the alleged value of the estate; he alleged that the estate partly consisted of a vine-ranehe, which was being cultivated by H. R. Myles at the time of his death, and that the preservation of this property, which was greatly dilapidated, required an immediate outlay of money for necessary repairs; that stock and implements were needed to carry it on and to gather the growing crops until it could be sold without a sacrifice; and that he in good faith made the necessary expenditures. And he exhibited an account of the real and personal estate which came to his hands and was finally sold by him, including teams and stock, wine-pipes, wine-vats, lumber, and all improvements made and furnished by him, amounting to $8,480, and a further account show *248 ing the additional sums received of $700 for the crop of 1864, and $3,000 for the crop of 1865, making the aggregate of his receipts $12,180. lie further set forth “that, acting under the power of attorney aforesaid, in selling, managing, and disposing of the estate of Henry R. Myles in California, including his necessary traveling expenses to and fro, legal costs in ejecting tenants, necessary repairs, improvements, attorneys’ fees, paying liabilities of decedent, erecting and putting up tombstones, and other necessary and incidental expenses, he had expended and was entitled to a credit for the just and full sum of $9,693;” and he claimed that he was entitled to a further allowance of $3,732.90 for expenses incurred in making and securing the crops of 1864 and 1865, making the aggregate sum of $13,425.90, exclusive of the sum of $1,000 claimed and recovered for his services in the other suit, and exceeding the whole amount admitted to have been received in California, in money or available assets, by the sum of $1,245.90.
The cause was referred to the master commissioner to state the accounts of the defendant from the pleadings and evidence, and a report was made charging him with the sum of $14,360.90, and crediting him by $13,425.90, showing a balance due .from him of $935.
Both parties excepted to the report, and the exceptions were overruled, except one of the defendant, based on proof of the payment of $500 in gold coin to an attorney of ihe plaintiffs upon one of the notes for the price of the vineyard property, with which the defendant was charged by the commissioner.
This exception was sustained; and the notes for the balance of the price of said property having been placed in the hands of a receiver for collection by consent, and $5,558.32 in gold having been thus collected and brought *249 under tlie control of the court, it was converted into currency, out of which $824 was allowed to the receiver for his services, and the plaintiffs and defendant were allowed to withdraw $500 each on loan; and the final judgment of the court assumes to allow the defendant to have and retain the entire balance of the proceeds of the vineyard property, and also in his own right, as devisee of George Myles and as assignee of W. P. Myles, to retain four fifths of said sum of $985 reported by the commissioner, only charging him with $187 by a credit on his claim in the other suit. But the judgment in effect, by permitting the plaintiffs to retain the $500 received by their attorney as aforesaid, and the $500 withdrawn by them on loan, allows the plaintiffs the benefit of those sums in addition to said sum of $187.
Both parties respectively, by the appeal and cross-appeal, seek a reversal of the judgment.
The power of Attorney under which the appellant acted gave him the fullest authority and discretion, consistent with fidelity and good faith, in the performance of his trust; but it would not protect him from responsibility if he acted unfaithfully or grossly mismanaged the business intrusted to him. And although the evidence on which the commissioner’s report seems to have been based might prima facie sustain the report, if there were no counteractive facts or circumstances to be considered, we can not reconcile the conclusions of the commissioner, which the court adopted, with certain facts which are patent in this case, and which it seems only necessary to refer to, to show that the judgment ought not to stand. It sufficiently appears that the appellee arrived in California with little or no money, and it is reasonably certain from the evidence that he received none from Kentucky while he remained in California. It is scarcely possible *250 therefore that he could have paid the amount allowed to his credit by the commissioner in excess of the receipts admitted by him, without the use of several thousand dollars in California; and although there is some proof of his having borrowed money from one individual, it is not reasonably probable that he could have gotten the loan of so large an amount unless upon the faith of H. R. Myles’s estate; and as it does not appear that he transmitted any money to that state after his return to Kentucky, it seems incredible that, if an indebtedness had been incurred in California for so large an amount for the benefit of the estate of H. R. Myles, the remnant of that estate could have been withdrawn from California without an assertion of the debt against it.
Various sums allowed as having been paid by the appellee appear to have been paid, if at all, on claims not legally collectable. It is difficult to reconcile such payments with good faith in an agent; or, in the absence of the most conclusive evidence, to believe that the full nominal amounts of such claims were really paid. It seems from the testimony of the administrator and others that he turned over to the appellant a large amount of notes and accounts of the estate which were regarded as of but little value, but it does not satisfactorily appear that part at least of these claims were not afterward collected by the appellee. Moreover, notwithstanding the plenai’y authority of the appellant to act as a provident agent, we can not regard his management of the estate, which resulted so ruinously, as within the legitimate scope of a general agency, intended not to conduct a permanent business in California, but to collect and convert the estate into money and remove it to Kentucky.
"We are therefore of the opinion that said sum of $5,558.32 in gold, or its proceeds, subject to the expense *251 of collecting it, and including the sums withdrawn on loan, and also the sum of $500 collected by the plaintiff’s attorney in California, as well as said sum of $935, should have been adjudged to belong to the estate of George Myles, deceased, but subject to the disposition made by his will of the estate inherited from H. R. Myles; but the judgment properly disposed of said sum of $935.
Wherefore said judgment of Thomas IT. Myles against George Myles’s executors and devisees is affirmed; but the judgment in the case of said executors against Thomas H. Myles is reversed, and the cause remanded for further proceedings .not inconsistent with this opinion.