CASE 28—PETITION EQUITY—SEPTEMBER 19.

## Carlin's adm'r v. Carlin, &c.

APPEAL FROM SPENCER CIRCUIT COURT.

1. PROPERTY CAN NOT BE HELD OR VESTED SO AS NOT TO BE SUBJECT TO THE OWNER'S DEBTS.—A bond for land provided that the land *should not be subject to. any debt* created by the vendee before a particular date, but to be subject to any debt he may make after the property comes into his hands.   *Held,* that this property was subject to the vendee's debts, no matter when created.   The provision in the writing attempting to screen it from prior debts is inconsistent with the grant itself, and null and void.

2. PROVISIONS OF A WILL ARE NOT CUT OFF OR LIMITED BY ANOTHER WRITING PREVIOUSLY EXECUTED WHICH IS NOT TESTAMENTARY.— Testator sold some land to his brother, and in his bond for the same inserted the following: " *This is all I intend for my brother;*" and, having no children, he afterward made a will in which he devised one half of his estate to his " *kindred as the same would descend at law.*"   *Held,* that the bond for the land does not deprive that brother of an equal interest with his brothers and sisters in the property devised to them.   To exclude him would be to decide that the word kindred did not include that brother.

3. A deed or bond made after a will is written might destroy the provisions of the will; but a will can not affect the rights of a party acquired under a deed or bond executed before the will takes effect.

4. Discharge of bankrupt does not relieve him from fiduciary obligations.

5. A security of the bankrupt, having paid his liability on a guardian's bond, recovered judgment against him, and subjected his estate acquired after his discharge.

BULLOCK & DAVIS, . ⎫
                     ⎬ . . . . . . . . For Appellant,
T. J. BARKER, . . . ⎭
                     CITED

3 Marshall, 229, Enlow's executors v. Enlows.
7 J. J. Marshall, 388, Griffith v. Huston.

C. M. HARWOOD, . . .⎫
T. N. & D. W. LINDSEY, ⎬ . . . . . . For Appellees,
JOHN MASON BROWN,   .⎭

CITED

Revised Statutes, section 1, article 13, chapter 30.
Revised Statutes, section 23, chapter 80.
12 B. Monroe, 483, Johnson v. Ellis.
3 Metcalfe, 260, Samuel v. Salter.
8 B. Monroe, 56, Pope's executors v. Elliott & Co.
2 Duvall, 553, Tanner, &c. v. Van Bibber, &c.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Peter Carlin left at his death the following as his last will and testament: "I give and bequeath to my wife Ann forever one half of all my estate, both real and personal. The residue I give to my kindred as the same would descend at law."

After his death his wife Ann, as administratrix with the will annexed, filed her petition in the Spencer Circuit Court, alleging that the personal estate was insufficient to pay the debts, and asking for the sale of several small tracts of land for that purpose, and a partition of the remaining lands between the devisees. D. F. Carlin, one of the brothers of the devisor, as well as all the parties interested, were made defendants to this proceeding. He filed his answer, resisting a sale of certain real estate described in the petition, alleging that his brother Peter, in October, 1868, had sold him this part of his realty. The answer is made a cross-petition against the appellant and all the co-defendants of the appellee in the original action.

The writing filed by appellee is as follows: "Know all men by these presents that I, Peter Carlin, of the county of Spencer and state of Kentucky, have this day sold, and by these presents do sell, to David F. Carlin, for the purpose of securing to him for his use and benefit after my death of a certain tract or parcel of land lying in the county of Spencer, known as the Vandyke mill property, with all the appurtenances; also one

house and lot deeded to me by Mary Davis, &c.; also one other tract of land containing twenty-three acres on the bluff below the creek, etc.   I sell this property to David F. Carlin, to be his forever after my death, and not to be *subject to any debt he may have owed before he made an assignment of his property for the benefit of creditors*, but is to be subject to any debt he may make after this property comes into his hands.   And this property is all I intend for my brother David to have of my estate, either real or personal."   If this land is lost (it being then in litigation), then his estate is to pay D. F. Carlin four thousand dollars.   "D. F. Carlin is still to act as my agent, and he is to have full possession of said property, to do with it as he may think best, and to give me credit for all moneys I may advance him on this bond; and the said D. F. Carlin is to pay my estate the amount advanced by me in two years after my death.   My brother, D. F. Carlin, is also to pay Emily J. Friar five hundred dollars in five years after he gets title to the land; and the same to be credited on a note she holds of D. F. Carlin's.   I want it understood that this bond shall not be produced or made known until after the lawsuit is decided.   Signed the 10th of October, 1868.

"PETER CARLIN."

The appellant pleads *non est factum* to this paper, under which the appellee asserts his claim to the property; and upon this issue much proof has been taken.   Six or eight witnesses on the part of appellant were examined, who speak of their familiarity with the handwriting of Peter Carlin, and state that in their opinion the name of Peter Carlin to the instrument of October, 1868, was not written by him, and is not his genuine signature.   On cross-examination these witnesses are shown various instruments of writing purporting to have been executed by Peter Carlin, and they express so many conflicting opinions in regard to his writing and signa-

tures as to satisfy this court that his handwriting varies so
much as to render it almost impossible for his most intimate
friends to recognize it.   The paper AA is proven to be in his
handwriting by a witness who saw him sign it, and the paper Z
is proven to have been written by him beyond any doubt.
These two handwritings have but little resemblance to each
other; but in comparing all the exhibits evidencing the signa-
ture to the paper in controversy we have no doubt that nearly
all the signatures appended to them are the genuine signatures
of Peter Carlin.   Some of appellant's witnesses state that the
paper S has the true signature of Peter Carlin upon it; others
that SB contains the genuine handwriting.   The opinions of
these witnesses are expressed in good faith; and the whole
proof shows that his handwriting varied almost as often as he
placed his pen on paper.   The witnesses Norman, Carlin, and
Wigginton swear that the signature to the writing is genuine,
and in this they are sustained by the declaration of his brother
that he intended to favor him, and the necessity for such aid
at the time this writing was made.   He was then a bankrupt,
and had surrendered his property to his creditors.   His brother
was wealthy and had no children.   We are satisfied that Peter
Carlin executed the writing in controversy.

It is also insisted that this writing is testamentary in its
character, and that its execution should be established as in
case of a will, or by incontestible evidence as the act and deed
of the donor.   This writing by its terms invested the appellee,
D. F. Carlin, with the equitable title to the property described
in it, subject to all the charges and incumbrances made upon
the same by the various provisions therein contained.   The
appellee, D. F. Carlin, entered upon the immediate enjoyment
of its use, with the right to possess the property and do with it
as he thought best.   He was compelled to pay the estate of his
brother various sums of money he had advanced upon this
property, and any other sums he might thereafter advance,

and also to pay Emily J. Friar five hundred dollars. These were some of the considerations moving Peter Carlin to execute this paper, and by its terms pecuniary obligations were imposed upon the appellee that he was compelled to discharge.

Appellee had possession of this property, as well as this writing executed and delivered to him by his brother, and no attempt at revocation by the brother could have affected the rights of appellee under it. It was a sale of the property to appellee for the consideration expressed in the instrument. A deed or bond made after a will is written might destroy the provisions of the will, but a will can not affect the rights of a party acquired under a deed or bond before the will takes effect. The will does not, in our opinion, revoke the writing of October, 1868, nor does this writing deprive him of an equal interest with his brothers and sisters in the property devised to them. Such a construction of the will, in our opinion, would defeat the plain intention of the devisor. He knew at the time he executed his will that he had previously given or sold to his brother that part of his real estate included in the writing of October, 1868. Appellee, being a brother, is as certainly embraced by the terms of the will as if his name had been inserted therein. To exclude appellee from the provisions of the will would be to decide that the word *kindred* did not include his brother; that is, that he wanted all of his kindred to have the estate except his brother, D. F. Carlin.

We have no doubt but what at the time Peter Carlin sold his brother the real estate that it was his intention not to give him any more of his property; but he doubtless changed his mind prior to the execution of the will, and intended that his brother should have an equal portion under the will with the rest of the kindred. He was a man of intelligence and business habits, and the best evidence of his intention to make his brother one of his devisees is the fact of his having failed to exclude him as a devisee by that instrument.

VOL. VIII.—11

The court below, upon the petition of the appellee, Stone, subjected the estate of D. F. Carlin, acquired under the writing of October, 1868, to the payment of a debt owing by Carlin as the guardian of his (Carlin's) children. The discharge in bankruptcy did not relieve him from these fiduciary obligations, and Stone, his security on the bond, having the money to pay, obtained judgment against him. D. F. Carlin relies on the clause of the bond from his brother, viz., "this property not to be subject to any debt he may have owed before he made an assignment of his property to his creditors, but to be subject to any debt he may make after this property comes into his hands." This debt was created long before the writing was executed and the assignment made to his creditors. It is true that while this property belonged to Peter Carlin it was not within the reach of his brother's creditors, and the same argument might be applied to all property acquired by the debtor after his indebtedness accrued; but having acquired the absolute title to the property, with the right to sell, alien, incumber, or dispose of it in any way he saw proper, we can perceive no reason why it is not subject to any debt owing by D. F. Carlin. This is no conveyance in trust for the support and maintenance of D. F. Carlin or his family, and no restriction placed upon the use or disposition of it in any way by the grantor; and even with a trust-estate created, this court, in the case of Johnson v. Ellis, 12 B. Mon. 483, say that "a testator can not, nor can any one, by our laws vest property or funds in the hands of trustees for the use of another without subjecting it to the debts of the *cestui que trust*." D. F. Carlin, with the proceeds of this estate could pay this debt, or any other debt, without forfeiting any right acquired under it. The title is as complete in him as it ever had been in Peter Carlin, and as much liable to his debts as to his brother's while the title was in him. This provision in the writing in regard to the debts of D. F. Carlin is

inconsistent with the grant itself, and therefore null and void. In order to sustain this clause in the writing a new estate would have to be created, heretofore unknown to the law.

We see no reason why the heirs or devisees under the will of Peter Carlin should account for what they received under the will of John Carlin.

The case is affirmed both on the original and cross-appeal, and the motion to dismiss the appeal at the cost of the administrator is overruled.