Case 63.—ACTION BY MARY B. SCHONBACHLER'S ADMINIS-
TRATOR AGAINST GEORGE MISCHELL AND OTHERS
FOR MONEY AND RENT.—November 21.

## Schonbachler's Adm'r v. Mischell, &c.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for defendants.    Plaintiff appeals.    Af-
firmed.

1. Decedents' Estates—Competency of Evidence—While under sec.
606, subsec. 2, Civil Code, defendants to an action by the ad-
ministrator of a deceased person can not testify for them-
selves, that fact does not render them incompetent as wit-
nesses for each other.
2. Same—Nor does the fact that they were joined as defendants
render them incompetent to testify for each other as the
jury might, in an action like this, find for one and against
the other.
3. Instructions—There being no issue of fact to submit to the
jury, the court properly directed a verdict for appellees.

    R. G. HILL for appellant.

### CLASSIFICATION OF QUESTIONS DISCUSSED.

This case should be reversed—

1. Because the averments in the amended petition filed Feb-
ruary 12, 1904, "that plaintiff's intestate left debts and no property
to pay same, and any gift to the defendants by her was void,"
were issuable facts, and were improperly stricken out.    (1 Dana,
365, gift fraudulent.)

2. Because the defendants were allowed to testify for them-
selves, on a claim against a decedent's estate.    (Code, subsec. 2,
sec. 606; 79 Ky., 62; 5 Ky. Law Rep., 179.) .

3. Because the appellant, Geo. Mischell, failed to prove payment
of any part of the $427 he collected belonging to the estate of
Mary B. Schonbachler.

4. The appellant, Mary Froelich, having joined issue with plain-
tiff, by denying that she conspired with another and overreached
and got possession of and received plaintiff's intestate's money

Schonbachler's Adm'r v. Mischell, &c.

and applied it to her own use; could not, after it was proven
that she obtained and received the money, set up a claim to it
as a gift by the deceased.   (Thompson on Trials, sec. 2309.)

5. Because the allegation in the petition, that appellees con-
spired together and overreached and defrauded plaintiff's intes-
tate out of her property, is abundantly sustained by the evi-
dence.   (1 Dana, 346 and 365; 12 Ky. Law Rep., 717.)

WILFRED CARRICO for appellees.

1. We submit that where two parties are sued in the same
action by an administrator, on a claim due a deceased person,
while neither of the defendants can testify as to any transactions
he had with deceased, either of them may testify as to transac-
tions which the other defendant had with such decedent, when
such testimony does not tend to support the defense of the other
or make such other party liable.

2. We further submit that the bill of exceptions in the record
should not be considered because not filed in time under the
Code.

## OPINION BY JUDGE SETTLE—Affirming.

Mary B. Schonbachler died in Daviess county intes-
tate.   By an order of the Daviess County Court the
appellant, J. A. Turner, was appointed and duly quali-
fied as administrator of her estate.    Thereafter he
instituted this action in the circuit court to recover
of the appellees, George Mischell and Mary Froelich,
rent and other moneys alleged to have been left in
their possession by the decedent at the time of her
death.   The petition as amended charged appellees
with having conspired together to defraud and ob-
tain the money of the decedent; that they did by such
means get possession of it and refused to comply with
appellant's demand that it be paid to him as adminis-
trator.   It was further alleged that the appellant had
no means of knowing and did not know how much of
the decedent's money appellees had wrongfully ap-
propriated, but that they had collected on a certifi-

cate of deposit from an Owensboro bank $400, in rents
$100, and other sums, the aggregate amount of which
was not less than $1,000. The prayer of the petition
asked a disclosure and accounting at the hands of ap-
pellees and a judgment against them for the amount
found to be in their possession and owing by them to
the estate of the decedent. The answer of appellee
Froelich simply traversed the averments of the peti-
tion, and that of appellee Mischell contained a similar
traverse and in addition the admission that he had
collected for the decedent and at her request $367
upon a certificate of deposit and $60 rent on a small
parcel of land in which she owned a life estate; that
these sums, amounting in the aggregate to $427, were
all the money or property of the decedent that he
ever had in his possession; that at her request he paid
out of this sum in settlement of various accounts she
was owing, $149.55, and the remainder, $277.45, he
paid the decedent, who at the same time paid it to ap-
pellee Mary Froelich for nursing, care, and attention
the latter gave and furnished her in her ill health.
There was filed with appellee Mischell's answer an
itemized statement showing the date and amount of
each payment of money made by him for the decedent
and on what account it was paid. Appellant filed a
reply controverting the affirmative allegations of the
answer of Mischell, which completed the issues,
after which there was a trial of the case by a jury
and a verdict for appellees in obedience to a peremp-
tory instruction from the court, given after all the
testimony was heard.

It is contended by appellant that he should have
been granted a new trial in the lower court, and that
he is now entitled to a reversal, because of the ad-
mission of alleged incompetent evidence on the trial

:and the giving of the peremptory instruction. It is argued for appellant that the appellees were not competent witnesses and that they should not have been allowed to testify as to conversations or transactions occurring between them, or either of them, and ihe decedent. It is true sec. 606, subsec. 2, Civ. Code Prac., renders them incompetent as witnesses in their own behalf, but it does not make them incompetent as witnesses for each other. Nor did the fact that they were joined as defendants in the action render either cf them incompetent to testify for the other, as the jury may, in a case like this, find in favor of one of the defendants and against the other. In other words, though a recovery was sought against both defendants, if only one were shown by the evidence to be illegally in the possession of the decedent's money, without the assistance or procurement of the other, the verdict of the jury could have gone against the defendant wrongfully holding the money and in favor of the other defendant.

It is, however, insisted that the rule announced can not properly apply to this case, for the petition as amended charges that the appellees entered into a conspiracy to defraud the decedent and did by that means obtain her money. As the testimony wholly failed to show either a conspiracy or intent to defraud upon the part of appellees, it is unnecessary for us to decide to what extent their right to testify for each other would have been affected by such a conspiracy, if proven. In Dovey v. Lam, 117 Ky., 19, 77 S. W., 383, 25 Ky. Law Rep., 1157, which was an action for assault and battery against several defendants, it was held that, inasmuch as separate judgments may be rendered as to each defendant in an action to recover for an assault and battery, the wife of one of the de-.

fendants is a competent witness for the others, although she is not, under sec. 606 of the Civil Code of Practice, a competent witness for her husband, and although the jury might unconsciously give her testimony effect as to her husband. As said in the opinion of the case supra: "Our Code was intended to broaden the rule for the admission of witnesses, and its proper construction requires that every witness shall be allowed to testify, with the exceptions named in the statute."

In this case the appellee Mischell testified in behalf of Mary Froelich that she took the decedent, Mrs. Schonbachler, who was an old and diseased woman, to her home, nursed and cared for her through her long sickness and until her death; that her entire stay with Mrs. Froelich lasted a year and eight months, during practically the whole of which she was feeble and unable to work, and much of it entirely helpless; that decedent was afflicted with consumption of the bowels, a loathsome and incurable disease, which produced almost constant and involuntary action of the bowels, that caused much befouling of the patient's clothing, bedding, and room, attended with nauseous odors. Mischell also testified as to the payment of $277.45 to appellee Froelich by the decedent, that the latter then said she was paying Mrs. Froelich for taking care of her, and that the services of Mrs. Froelich in nursing and caring for decedent were worth many times the money she received. Upon the other hand Mrs. Froelich testified as to Mischell's furnishing the decedent the statement, made a part of his answer, containing the account of the expenditures made for her out of money of hers in his hands, and that the $277.45 of her money remaining in Mischell's hands was then paid to decedent by him. This sum, as shown by other wit-

nesses, was the same paid appellee Froelich by the decedent. Mrs. Froelich also testified that Mischell from time to time made purchases of whisky and other things at the decedent's request and for her use. Mischell gave no testimony himself in chief as to the collections of money he made for the decedent or the disposition he made of it, but did testify fully in that behalf when cross-examined by appellant's counsel. Such testimony, therefore, as he gave in regard to transactions between himself and the decedent, was brought out by appellant's counsel. In the examination in chief of Mrs. Froelich appellee's counsel confined his questions and the answers of the witness to such matters as related to the defense of Mischell and his transactions with the decedent, about which he could not have testified in his own behalf; but on cross-examination appellant's counsel caused her to testify fully as to conversations and transactions between the witness and the decedent, including the payment to her by the decedent of the $277.45 which the latter had received from Mischell. So it appears from the record that the only incompetent testimony elicited from either of the appellees was brought out by appellant's counsel upon cross-examination. Therefore it does not lie in the mouth of appellant to say he was prejudiced by it.

Appellees were corroborated by Paul Fry and wife as to what occurred when Mischell presented to the decedent the statements showing what use had been made by him of her money. They heard him tell her that there was $277.45 remaining in his hands, which he paid her, and this sum she immediately paid to appellee Froelich in satisfaction of what was due her for nursing and caring for decedent. They also saw Mischell pay her money before that time,

and on the occasion of his giving her the $277.45 as
the balance due her they heard decedent say that
was right and express her satisfaction with his state-
ment of expenditures. These witnesses and two
others, William Grouse and Elizabeth Echert, also
testified as to the disease with which Mrs. Schon-
bachler was afflicted, as to her condition while she
was at the home of appellee Froelich and the care
and nursing the latter gave her, and all of them
agreed that the services of Mrs. Froelich were well
worth $25 or $30 per week. The last four witnesses,
Fry and wife, Wm. Grouse, and Mrs. Echert, fairly
support the defense interposed by appellees, inde-
pendently of their testimony. The testimony of ap-
pellees as a whole seems to leave no doubt that ap-
pellee gave Mrs. Schonbachler a home when she had
no place of abode, that she cared for and nursed
her as no one else would have done, and for a com-
pensation far short of what her services were worth,
and, furthermore, that the appellee Mischell honestly
accounted to the decedent for all her money that went
into his hands, and that she paid to appellee Froe-
lich $277.45 of it in satisfaction of what she owed her
for services rendered in nursing and caring for her.

The only testimony introduced for the appellant
was that furnished by himself and James Taylor.
Appellant had two conversations with appellee Mis-
chell and one with appellee Froelich before bringing
suit. From each of them he learned that Mrs. Schon-
bachler left no money or property, and from Mis-
chell he learned what she had done with her money.
Taylor knew nothing about the case, except that a
will was made by the decedent a short time before
her death in which her entire estate was devised the
appellee Froelich, and that it was not admitted to

probate by the county court when offered for that purpose, presumably because the decedent was not competent to make a will when it was executed though no reason appears in the evidence for its rejection by the probate court. The will in question was written by appellee Mischell, as he testified on cross-examination, at the request of the decedent. The latter had more than a year before her death made another will, in which she devised her property to an absent son, of whom she had not heard for many years. This will she had Mitchell in her presence destroy, probably because she believed the long-absent son dead.

We have been unable to find anything in the testimony of appellant that is contradictory of that of appellees or that conduces in any degree to entitle appellant to recover. This being true, there was no issue of fact to submit to the jury. Consequently the lower court did not err in giving the peremptory instruction.

Judgment affirmed.