## Benge's Administrator v. Fouts.

## Same v. Creech.

(Decided March 26, 1915.)

## Appeals from Clay Circuit Court.

1. **Contracts—Services.—Decedent's Estates—Action Against to Recover for Personal Services—When Petition May Be Amended.—** Where each of two plaintiffs sued the administrator of a decedent to recover for personal services rendered the latter, and the petition of each based the recovery on the ground that there was an express promise by the decedent to pay the plaintiff the reasonable value of the services; an amended petition offered by each plaintiff alleging that the decedent promised to make a will whereby she would device such plaintiff property or a sufficiency thereof to reasonably compensate her for such services, was properly allowed by the court to be filed.

2. Action—Trial of Two or More Actions Involving Same Issues Brought by Different Plaintiffs Against Same Defendant.—When Cannot be Tried Together.—Ordinarily where several actions are brought by different plaintiffs against the same defendant and involving the same issues, the court may order them tried together; but where the issues in the several cases are such as must be tried by a jury, and there is objection from one of the parties, and the circumstances are such that the trial of the cases together would tend to place the objecting party in a position not occupied by his adversaries, and that would probably give the latter an undue advantage in the trial, the court should not permit them to be tried together. Whether the cases should be tried together is a matter in the discretion of the court, and such discretion will not be interfered with on appeal unless it is clearly made to appear that the discretion was abused.

3. Evidence—The Plaintiff in Each of Two Similar Actions Against an Administrator Cannot Testify for Himself, but Each May Testify for the Other.—While under Section 606, Subsection 2, Civil Code, parties to an action or actions by or against the administrator of a deceased person cannot testify for themselves, that fact does not render them incompetent to testify for each other; nor does the fact that they are joined as plaintiffs or defendants render them incompetent to testify for each other, as the jury might find for one and against the other.

4. Trial—Erroneous Instructions—When Prejudicial.—The two instructions given in each of these cases, while properly advising the jury that in order to entitle the plaintiff to recover they must believe from the evidence not only that the services described therein were performed by the plaintiff, but that they were performed under an agreement with the decedent that she would make a last will and testament and devise to the plaintiff as much or more property as was sufficient to recompense and pay her for all services rendered to the decedent under such agreement, if any there was, and that such services were rendered by the plaintiff under the agreement with the expectation on her part and on the part of the decedent that she should be paid therefor; it erroneously failed to advise the jury that they must confine the recovery to the value of the services rendered during the years and following the intervals set out in the petitions as amended.

5. Trial—Verdict—Excessiveness of—When Ground for Reversal.— A verdict in each of these cases awarding the plaintiff $7,500 against the administrator of the decedent is so exorbitant as to strike the mind at first blush as having been superinduced by passion or prejudice.

HICKMAN & WELLS, D. K. RAWLINGS, G. G. BROCK and RAWLINGS & WRIGHT for appellant.

W. E. FAULKNER, H. C. FAULKNER, J. W. STIVERS, D. W. WHITE and H. C. FAULKNER, JR., for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

In each of these actions there was a recovery in the court below by the appellee of a verdict and judgment for $7,500.00 against the appellant, as administrator of the estate of E. J. Benge, deceased, and the administrator has appealed from each of these judgments.

The decedent, Miss E. J. Benge, died childless and intestate, November 12, 1911, in Clay County, where she was then domiciled. Shortly after her death the appellant, George A. Young, was appointed and duly qualified as the administrator of her estate. The decedent was born and reared in the State of Iowa, from which State she came to Indiana, and after a residence there of three or four years removed to Clay County, this State, bringing with her about $2,000.00, inherited from a deceased relative in Iowa. For several years she taught school in Clay County. Being a woman of good business capacity she saved the greater part of the salary earned in teaching and kept the same, together with the money she brought with her to this State, profitably invested. About the year 1870 she invested her savings in a tract of land in Clay County and began merchandising on a small scale, using a part of her residence as a store for her goods. With the profits arising from this business she purchased from time to time additional lands adjoining the tract upon which she lived, until she became the owner of several hundred acres. In the meantime her mercantile business grew until she was compelled to erect a storehouse and warehouse for its accommodation. At the time of her death she was the owner of a very considerable estate, both real and personal.

The two actions out of which these appeals grew were instituted in the Clay Circuit Court. To prevent confusion we will first state the facts set out by the petition in the action of the appellee, Ann Creech.

The petition contains four paragraphs. In the first paragraph it is, in substance, alleged that on November 1, 1874, the appellee, who was then a young woman, at the request of the decedent, E. J. Benge, became an inmate of the home and entered the employ of the latter as a house maid, helper in the store and on the farm; the services rendered by her under such employment consisting of work as a clerk and saleswoman in the store, the performance of household duties, and labor on the farm, such as is commonly required of men rather than

women; that under such employment appellee remained with and rendered for the decedent the services mentioned from November 1, 1874, down to August 27, 1893, a period of eighteen years, nine months and twenty-six days; that for the labor and services thus performed by appellee the decedent, both at the time they began and repeatedly during their continuance, promised that she should be reasonably compensated by her, and that the last promise so made by the decedent was "within the two years last past and within two years before the death of the said E. J. Benge when the said E. J. Benge in consideration of the services aforesaid agreed and promised this plaintiff to pay to her within a short time thereafter the full value of said services, and for all of said services, and to pay for same within less than one year thereafter;" that the services performed by her during the eighteen years, nine months and twenty-six days were reasonably worth $400.00 per year, amounting in the aggregate to $7,528.00, no part of which, except about fifteen dollars per year, or $283.55 in the aggregate, had been paid, which left due her for her services covering the time mentioned, $7,244.65, for which she prayed judgment.

In paragraph 2 it was, in substance, alleged that between August 27, 1893, and November 12, 1909, the decedent resided near appellee and was much of the time in poor health; that it was her habit to send for appellee and require her personal attendance in nursing and taking care of her, which services appellee always performed and, in addition, did for her much house work. This paragraph contained averments like those in the first paragraph as to promises on the part of the decedent to reasonably compensate her for these services, and that the services were reasonably worth twenty-five dollars per year or $405.20 for the sixteen years, two months and fifteen days between the dates mentioned; but that no part thereof had been paid. For this $405.20 judgment was also prayed.

In the third paragraph compensation was claimed for services rendered the decedent by appellee in nursing and caring for her during an illness lasting from November 12, 1909, to July 3, 1910, two hundred and thirty-one days, alleged to be reasonably worth five dollars per day, and $1,155.00 in the aggregate, judgment for which was asked. This paragraph also alleged, as did the others, that the services were rendered upon the

promise of the decedent, repeatedly made down to within the two years before her death, that appellee should be reasonably compensated therefor.

In the fourth paragraph a recovery was sought for services similar to those mentioned in the third paragraph, claimed to have been rendered by appellee for the decedent at intervals between July 3, 1910, and November 12, 1911, the date of the decedent's death, this period embracing one hundred and eighty-nine days and including the last illness of the decedent. It was likewise alleged in this paragraph, as in the others, that the services mentioned were rendered at the decedent's request and upon her promise, repeatedly made, to reasonably compensate appellee therefor, and that the services were reasonably worth five dollars per day, or the aggregate sum of $920.00. The entire amount claimed in the petition was $9,724.65.

The petition in the action brought by Kitty Fouts contains two paragraphs, each seeking a recovery for services rendered the decedent similar in character to those sued for by Mrs. Creech; those mentioned in the first paragraph having been performed, as alleged, between March 28, 1885, and December 11, 1907; that the services were rendered upon the promise of the decedent to reasonably compensate her therefor, and this she repeatedly promised to do, the last promise being made within a year of her death, which occurred November 12, 1911; that from March 28, 1885, until October 28, 1896, a period of eleven years and seven months, her services were reasonably worth $300.00 per year, or $3,475.00 in the aggregate; that from the latter date to October 28, 1902, six years, her services were reasonably worth $600.00 per year, or $3,600.00 in the aggregate; and from October 28, 1902 to December 11, 1907, five years, one month and thirteen days, they were reasonably worth $800.00 per year, or $4,095.55 in the aggregate. It was admitted, however, that these amounts were to be credited by $341.25, paid by the decedent from time to time during appellee's performance of the services sued for.

In the second paragraph it was alleged that between December 11, 1907, and November 12, 1911, the date of the decedent's death, appellee from time to time rendered the same character of services for the decedent, which were reasonably worth, as a whole, $98.00. This paragraph also alleged repeated promises on the part

of the decedent to reasonably compensate appellee for the services, beginning with the first of the services and continuing down to within two years of the decedent's death. The entire amount claimed in the petition was $10,937.80.

After interposing a demurrer to each of the petitions, which were overruled, to which appellant excepted, he by answer filed to each of the petitions traversed the averments thereof and pleaded the statute of limitations. May 13, 1913, nearly a year after the institution of the actions, each of the appellees asked leave to amend her petition, to which appellant objected. The court, however, allowed the amendments to be filed and to this ruling appellant excepted. The amended petitions are alike in terms and as to matter, except the difference in the periods of time covering the services of the appellees, respectively, and difference in the amounts sued for, respectively. In order that their purpose and meaning may be understood, we here insert that of the appellee Ann Creech, omitting its formal parts.

"Plaintiff, Mrs. Ann Creech, for amendment to her original petition and to each paragraph thereof, says, that when she went to serve the deceased, E. J. Benge, as set out in the petition, the said E. J. Benge agreed to and with her to pay her reasonably and well for all her services and for her companionship, aid and society, or to provide for her in her last will and testament a devise of her property, more than the full value of her services; that she served the deceased under this agreement for some four or five years, as set out in the petition, the said agreement and understanding between the plaintiff and the deceased having been renewed from time to time, when the deceased brought to her residence one Lizzie Philpot to serve the deceased with this plaintiff; that thereupon the deceased entered into an agreement to and with this plaintiff and the said Lizzie Philpot that if they two would continue to serve the deceased, as the plaintiff had been serving the deceased, she would make a last will and testament, and would devise to them, the plaintiff and the said Lizzie Philpot, each, property, real, personal and mixed more than sufficient to recompense and pay them for all the services theretofore rendered by this plaintiff, and for all the services that they and each of them should thereafter render. She says that she and the said Lizzie Philpot agreed to and with the deceased, to work for the deceased and

serve her under that contract, and they continued to do so and this plaintiff served her, as set out in the petition, until about the last of March, 1885, when the deceased brought to her place one Kitty Cornett, whom she desired to serve her along with the plaintiff and the said Lizzie Philpot; whereupon, the deceased entered into a contract and agreement to and with this plaintiff and the said Lizzie Philpot and the said Kitty Cornett that if this plaintiff and the said Lizzie Philpot would continue to serve her as they had been and the said Kitty Cornett would join in such service and serve the deceased in the same way, she would devise and will to they three all her property, real, personal, mixed, except a small sum of money, not exceeding two thousand dollars, which she, the deceased, had from her father's and mother's estate, and which she desired to go back, or descend to the legal heirs of her father and mother in the proportion she had received the same from her said father and mother.

"Now plaintiff says that she continued to serve the deceased, under that agreement, to which she agreed, and served her as set out in the original petition herein; that the said Kitty Cornett and the said Lizzie Philpot, each served the deceased for several years under that agreement. She says that from time to time during said service and down to within a month or two of the death of the deceased, she continued the promise and agreement aforesaid to this plaintiff for and on her behalf and on behalf of the said Lizzie Philpot and the said Kitty Cornett; and she says that she performed all the services set out in the petition under the said contract or contracts as hereinbefore set out, and that said services were reasonably worth and were of the value to the said E. J. Benge as set out in the original petition; but she says that the said E. J. Benge violated and broke her said contract in this, that she died without having made any last will and testament, and without having paid or advanced to this plaintiff any part of her services, except the small sum admitted in the original petition.

"She says further that by her labor, care and comfort, as set out in the original petition, and through and by the help of the said Kitty Cornett and the said Lizzie Philpot, as shown herein, the said E. J. Benge, through the years of their service as aforesaid and as a result of their service as herein set out, acquired and built up as

the fruits of their labor a large estate, more than sufficient to have enabled the said E. J. Benge to perform her contract made as herein set out, not only with this plaintiff but with the said Lizzie Philpot and Kitty Cornett as well, and then to have paid back to the heirs and descendants of her father and mother all she received from them and each of them, according to the said contract, and then left some thousands of dollars besides.

"Wherefore, the plaintiff prays judgment against the estate of E. J. Benge for the value of her services as set out in the petition, to-wit, $7,244.65, on the first count, and $405.20 on the second count, and $1,155.00 on the third count, and $920.00 on the fourth count thereof; or if this cannot be done then she asks damages for the breach of the said contract in the sum of $9,724.85, and for her cost and for all proper relief."

Following the filing of the amendments appellant insisted upon his demurrers to the petitions, as amended, and the demurrers being overruled, he excepted. He then filed an answer to each of the amended petitions, traversing its allegations and pleading the statute of limitations.

On October 3, 1913, the plaintiffs in these two actions (appellees on this appeal) moved the court to set the two cases down for trial together, giving as a reason therefor that the two causes of action arose out of the same contract, the witnesses were the same in both cases and both were actions against the same defendant. This motion was objected to by appellant, but the objection was overruled and the motion sustained, to which appellant excepted. The cases were thereafter tried together, the trial resulting, as already stated, in a verdict in favor of the plaintiff in each case for $7,500.00.

Appellant asked a new trial in each case and now asks a reversal of the judgment in each upon the following grounds: (1) That the trial court erred in overruling his demurrers to the original petition and to the petition as amended; (2) In trying the two actions together; (3) In admitting incompetent evidence; (4) In overruling his motion for a peremptory instruction; (5) In instructing the jury and refusing instructions offered by appellant; (6) That the verdict is grossly excessive.

We will pass on the questions raised by the foregoing assignment of errors in the order in which they are presented. No reason is perceived for our disagreeing with the ruling of the trial court on the demurrers. Each

of the petitions, as amended, states a cause of action. The recovery sought by the original petitions was upon an alleged express contract and also the *quantum meruit*, the allegations being that the services sued for were rendered upon the decedent's promise to pay therefor, and, in addition, that they were rendered at the request of the decedent, with the expectation both on the part of each appellee and the decedent that they would be paid for, that is, reasonably compensated. We have repeatedly held that where such services, though out of the ordinary, are performed by one whose relationship to the person served is such as to raise a presumption that they were rendered gratuitously, there can be no recovery of compensation therefor, unless the evidence is of such convincing character as to prove either that there was an express contract for the payment of the services, or that at the time they were rendered, the person rendering them expected compensation and the person receiving them intended to pay therefor. Sutherland v. Sutherland's Exr., 142 Ky., 688; Humble v. Humble, 152 Ky., 160; Green's Exr. v. Green, 119 Ky., 103; Galloway's Admr. v. Galloway, 24 R., 857.

Here, however, the appellees sustained no such relationship to the decedent as raised the presumption of gratuitous service, and if they had not amended their petitions, respectively, the cause of action therein stated, in the absence of the express contract alleged, would have authorized a recovery for the reasonable value of their services, upon satisfactory proof of an implied contract, to the extent that the respective claims were not barred by the statute of limitations. But by the amendment filed by each of the appellees to her petition, the ground of recovery is made to rest upon an alleged promise of the decedent to pay each of them for the services rendered, at a particular time and in a particular manner; that is, that she expressly agreed to make a will whereby she would devise them and Mrs. Parker, who had performed like services for her, her property or a sufficiency thereof to reasonably compensate each of them for her services.

It is more than probable that but for the filing of the amended petitions the trial would have disclosed that the greater part of the appellees' demands were barred by the statute of limitations; and in view of the unsatisfactory excuse given, in an affidavit of each of the appellees, for their laches in not setting up in their

respective petitions the alleged agreement as to the devise, set up by the amendments, colorable ground is afforded for the suspicion expressed by appellant that the amendments were made in avoidance of the statute. Be this as it may, the question we are called upon to decide is, was it permissible to file them? In Newton's Exr. v. Field, 98 Ky., 186, the plaintiff sued an executor to recover for services rendered to his testatrix under an alleged promise by the latter to make compensation by providing for plaintiff in her will, which, it was alleged, she failed to do. On the trial there was a failure to prove a promise by the testatrix to make such compensation by her will. Notwithstanding the failure to prove such promise, the circuit court permitted the case to go to the jury upon instructions allowing a recovery upon the *quantum meruit.* On the appeal we held that this was error, in the absence of an amended pleading offered or filed, to correspond with the proof and asking a recovery upon the implied agreement arising from the facts established. In the opinion it is said:

"Under the Code, if there are averments in a petition presenting a state of facts from which the law would imply a promise to pay, it is not necessary to allege an express promise, but an averment that the goods were sold and delivered at the request of the defendant, or that the labor and services were performed by the plaintiff for the defendant at his special instance and request, would be held sufficient, and the averment of an express promise to pay, and nothing more, is mere surplusage, adding nothing to the complaint and requiring no proof to sustain it. (Bridges v. Reed, 9 Bush, 329; Drake v. Semonin, 82 Ky., 291). But the case before us is based on an express agreement to pay for the services at a particular time and in a particular way, the defendant's testatrix agreeing to make a will by which she would, in some of its provisions, make compensation to the appellee for the services rendered. The breach of the contract is then set forth, and upon the hearing it turns out that no such contract was made, and, therefore, the appellee must go out of court or amend her petition so as to recover upon a *quantum meruit.* There is a fatal variance between the contract as alleged and that the law would imply by reason of the services having been rendered at the request of the defendant. It is not pretended that this action is based upon an implied contract, but that, as the express contract has failed for

want of proof, a recovery may be had, without pleading upon, an implied agreement. This cannot be done. (Bull v. McCrea, 8 B. Mon., 424; Frankfort Bridge Co. v. City of Frankfort, 18 B. Mon., 41).''

The conditions obtaining in the case, *supra*, are reversed in the instant cases. Here each of the petitions declared upon an express verbal promise to compensate each of the appellees for the services rendered, the promise being indefinite as to the amount of compensation and as to the time and manner of its payment. But by her amended petition each of the appellees, though still relying upon the express promise, makes it definite as to the manner and time of performance; that is, that reasonable compensation to appellees for the services rendered the decedent was to be provided by the will of the decedent. Manifestly, if it is admissible to amend a petition by alleging in the amendment that the contract upon which it seeks a recovery is not an express contract, as averred in the petition, but an implied contract, indefinite as to time and manner of performance, it is equally so to amend by alleging that the contract was not only an express contract, as alleged in the petition, but that it was also definite as to time and manner of performance. Civil Code, Section 134; Adams Oil Co. v. Christmas, 101 Ky., 564; Greer v. City of Covington, 83 Ky., 410; L. & N. R. R. Co. v. Poynter, 113 Ky., 952. It follows from what has been said that the action of the circuit court, in permitting the amended petitions to be filed, and overruling the demurrers to the petitions as amended, was not error. It is undoubtedly the law, that where services are rendered upon the promise of a definite legacy, a reasonable compensation may be recovered where no provision by will is made. (Myles v. Myles, 6 Bush, 237; Usher v. Flood, 83 Ky., 552; Thomas v. Feese, 21 R., 206; Walker v. Ganote, 116 S. W., 689.) In such case the cause of action does not accrue until the promisor's death, and the statute of limitations does not begin to run until the cause of action accrues.

Appellant's second contention presents a question which does not appear to have been passed on in this jurisdiction. The question is, did the circuit court err to the prejudice of any substantial right of the appellant in requiring that these two actions be tried together? In 38 Cyc., 1269, it is said:

''The court may order several causes of the same nature in which the parties are the same to be tried to-

gether; and where several actions are brought by one plaintiff against different defendants, or by different plaintiffs against one defendant, and the issues are the same in each action, the court may, in order to avoid unnecessary delay and expense, order them to be tried together. It has been held that the order may be made, although defendants employ different counsel, and the evidence in the several cases is different. The order does not have the effect of merging the several actions into one. Its only effect is that the suits be tried together. Each case retains its distinctive characteristics and the judgment in each case is several. And if the proceedings and judgment in either of the cases are erroneous, such error must be fatal to that judgment, although the others may be free from error. It is within the discretion of the trial judge at what time to submit each case to the jury. Where the defenses in the several cases are different it is erroneous to order them to be tried together. But error in ordering a trial of separate causes together is harmless if the final result reached was right.''

Among the cases in the foot-notes, cited in support of the text, is that of Anderson v. Sutton, 2 Duvall, 480. The several cases there heard together were actions brought by creditors of a single debtor, against whose property each creditor had caused an attachment to issue and be levied. The cases were not tried by a jury, but by the court, and it was held on the appeal that although several cases in the names of different plaintiffs against the same defendant may be heard at the same time, yet if each retains its distinctive characteristics and the judgment in each case is several, and the proceedings and judgment in any of the cases be erroneous, such error must be fatal in that particular case, though the others may be free from error. It is manifest that this case does not decide the question here involved.

In the absence of any authoritative ruling by this court we will say that ordinarily, where there are several actions brought by different plaintiffs against one defendant and the issues are the same in each action, the court may try them together; but that where the issues in the several cases are such as must be tried by a jury, and there is objection from one of the parties and the circumstances are such that the trial of the cases together would tend to place the objecting party

in a position not occupied by his adversaries, and that would probably give the latter an undue advantage in the trial, the court should not permit them to be tried together. Whether the cases should have been tried together was a matter in the discretion of the trial court, and such discretion should not be interferred with on appeal unless it is clearly made to appear that the discretion was abused.

In the instant case it was, in our opinion, abused. The situation at the trial was such as to place appellant at a disadvantage. Each of the appellees was the principal witness for the other, but, as each was the plaintiff in her own case, neither could be placed under the rule and thereby excluded from the courtroom while the other or her witnesses were testifying. If the cases had been tried separately neither appellee would have gone on the witness stand in her own behalf; at any rate, if she had done so she could not have testified in her own behalf as to any transaction between herself and the decedent, and yet on the trial of the two cases together, in spite of such precautions as seem to have been taken by the court, each, in testifying for the other, gave testimony which in the manner related was of equal or greater importance to herself. Having a common interest and each having heard the testimony of the other, the one testifying last could avoid the mistakes of the one testifying first, and if disposed to do so, could have strengthened her testimony in the particulars in which that of the other was weak. Under these circumstances the court's admonition to the jury that they were not to consider the testimony of either appellee as evidence in her own behalf, could have little effect. We think it manifest that appellant was placed at such a disadvantage as to prevent his having a fair trial.

Appellant's third contention, which makes complaint of the admission of the testimony of each of the appellees for the other, is unsound. While under Section 606, subsection 2, Civil Code, parties to an action by or against the administrator of a deceased person cannot testify for themselves, that fact does not render them incompetent as witnesses for each other; nor does the fact that they are joined as plaintiffs or defendants render them incompetent to testify for each other, as a jury might find for one and against the other. (Schonbachler's Admr. v. Mischell, Etc., 121 Ky., 498; Dovey v. Lam, 117 Ky., 19). It follows from these authorities

that no error was committed by the court in allowing each of the appellees to testify for the other.

Appellant's complaint of the refusal by the trial court of the peremptory instruction asked by him at the conclusion of the evidence, is without support from the record. Indeed, this is in effect conceded by the brief of appellant's counsel. Without discussing the evidence, it is sufficient to say that while much of it was conjectural and otherwise unsatisfactory, the testimony of each of the appellees in behalf of the other and that of Mrs. Parker given for both of them, compelled the submission of the case to the jury.

The complaint made of the instructions is well taken. The instructions, two in number, were the same in each case, with the difference in names and duration of services claimed to have been rendered. Instruction No. 1 properly advised the jury that in order to entitle the plaintiff to recover they must believe from the evidence not only that the services described therein were performed by the plaintiff, but that they were performed under an agreement with the decedent that she would make a last will and testament and devise to the plaintiff as much property as was sufficient to recompense and pay her for all services rendered the decedent under such agreement, if any there was, and that such services were rendered by plaintiff under the agreement with the expectation on her part and on the part of the decedent that she should be paid therefor; but if they did not so believe from the evidence, then they should find for the defendant. The error in this instruction consists in its failure to confine the recovery to the value of the services rendered during the years and following the intervals set out in each petition, as amended, and allows a recovery for services rendered during the entire time between the beginning of such services and the death of the decedent, in spite of the admission by each of the plaintiffs that there were intervals between the date they began to render such services for the decedent and her death, during which they performed no service for her.

The second instruction properly told the jury that the measure of recovery if they found for the plaintiff, was the fair cash value of her services rendered for the deceased, if any, not exceeding the aggregate amount sued for, with interest from the death of the decedent, but this instruction, like the first, fails to confine the

recovery to the years and times during which it is alleged in the petition, as amended, they were rendered.

None of the instructions offered by appellant's counsel conform to the law of the cases as announced by us, therefore their refusal by the court was not error.

Appellant's complaint of the excessiveness of the verdicts must also be sustained. While much of the evidence introduced for the appellees conduces to fix the value of their services at amounts as great or greater than found by the jury, it is patent that a majority of the witnesses indulged in mere expressions of opinion, without giving intelligent reasons therefor. In other words, their testimony, as well as that of the appellees themselves, shows that they took an exaggerated view of the value of the services sued for. Indeed, we incline to the opinion that many of the witnesses testifying on this subject allowed their sympathy for the appellees to get the better of their judgment; and that this sympathy became so contagious as to spread to and affect the jury. We are unwilling to approve such exorbitant verdicts as that in each of these cases appears to be, and Section 340, subsection 4, Civil Code, empowers us to condemn and set such verdicts aside. It has been repeatedly held by this court that a new trial will be granted because of excessive damages when they appear to be so great as to strike the mind at first blush as having been superinduced by passion or prejudice. L. & N. R. Co. v. Mitchell, 87 Ky., 327; Standard Oil Co. v. Tierney, 92 Ky., 367; Letton v. Young, 2 Met., 558; M. & L. R. Co. v. Herrick, 13 Bush, 122; Sherley v. Billings, 8 Bush, 144; L. & N. R. R. Co. v. Fox, 11 Bush, 495; L. & N. R. Co. v. Long, 94 Ky., 410.

For the reasons indicated the judgment in each case is reversed and the causes remanded for new trials consistent with the opinion.